The FARMINGTON RIVER POWER
COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

No. 352, Docket 71–1183.

United States Court of Appeals,
Second Circuit.

Argued Dec. 7, 1971.

Decided Jan. 20, 1972.

Michael J. Dorney, New Haven, Conn.
(James W. Cooper, and Tyler, Cooper;
Grant, Bowerman & Keefe, New Haven,
Conn., on the brief), for petitioner.

J. Richard Tiano, Asst. Sol., F. P. C., Washington, D. C. (Gordon Gooch, Gen. Counsel, Leo E. Forquer, Sol., and Charles K. Barrow, F. P. C., Washington, D. C., on the brief), for respondent.

Before ANDERSON, OAKES and TIMBERS, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

The Farmington River Power Company (Farmington), a wholly-owned subsidiary of the Stanley Works of New Britain, Connecticut, operates a hydroelectric facility on the Farmington River in Rainbow, Connecticut which provides electrical power to its parent corporation. The project, consisting of a 400-foot long masonry dam and two 5000 kva generators, was constructed in 1925 and remains essentially unchanged today. The Farmington River, as stipulated by the parties, is nonnavigable.

After being notified by the Federal Power Commission (Commission) that it was obliged to obtain a license for its continued use of the dam, Farmington filed an incomplete license application under protest on March 1, 1966. The Presiding Examiner's Initial Decision of September 4, 1969, affirmed by the Commission November 12, 1970, found that Farmington was required to obtain a license. We reverse that determination.

The issue presented in this case of first impression concerns the statutory construction of § 23 of the Federal Water Power Act of 1920[1] and § 23(b) of the 1935 amendments[2] thereto.

1. § 23, 41 Stat. 1075 (1920), in pertinent part reads as follows:
"Any person, association, corporation, State, or municipality intending to construct a dam or other project works across, along, over, or in any stream or part thereof, other than those defined in this chapter as navigable waters and over which Congress has jurisdiction under its authority to regulate commerce between foreign nations and among the several States, may in their discretion file declaration of such intention with the commission, whereupon the commission shall cause immediate investigation of such proposed construction to be made, and if upon investigation it shall find that the interests of interstate or foreign commerce would be affected by such proposed construction, such person, association, corporation, State, or municipality, shall not proceed with such construction until it shall have applied for and shall have received a license under the provisions of this chapter. If the commission shall not so find, and if no public lands or reservations are affected, permission is hereby granted to construct such dam or other project works in such stream upon compliance with State laws."

2. § 23(b), 16 U.S.C.A. § 817, as amended in 1935, reads as follows:
"It shall be unlawful for any person, State, or municipality, for the purpose of developing electric power, to construct, operate, or maintain any dam, water conduit, reservoir, power house, or other works incidental thereto across, along, or in any of the navigable waters of the United States, or upon any part of the public lands or reservations of the United States (including the Territories), or utilize the surplus water or water power from any Government dam, except under and in accordance with the terms of a permit or valid existing right-of-way granted prior to June 10, 1920, or a license granted pursuant to this chapter. Any person, association, corporation, State, or municipality intending to construct a dam or other project works across, along, over, or in any stream or part thereof, other than those defined in this chapter as navigable waters, and over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States shall before such construction file declaration of such intention with the Commission, whereupon the Commission shall cause immediate investigation of such proposed construction to be made, and if upon investigation it shall find that the interests of interstate or foreign commerce would be affected by such proposed construction, such person, association, corporation, State, or municipality shall not construct, maintain, or operate such dam or other project works until it shall have applied for and shall have received a license under the provisions of this chapter. If the Commission shall not so find, and if no public lands or reservations are affected, permission is granted to construct such dam or other project works in such stream upon compliance with State laws."

Although Farmington concedes that if it had constructed the dam after 1935, a license would have been required, it asserts that a license was not and is not required for a dam built prior to 1935 across a nonnavigable stream.

During the course of the litigation, the Commission has presented several theories in support of its position. In the initial hearing below, the Commission staff did not rely upon either § 23 of the 1920 Act nor amended § 23(b), but instead argued that § 4(g),[3] enacted in 1935, provided it with the requisite authority to require a license. This contention, however, was rejected by both the Examiner and the Commission. The Presiding Examiner rested his decision on the ground that § 23(b) was to be retroactively applied to pre-1935 cases, while the Commission, rejecting the retroactive theory, claimed that the original § 23 was sufficient. In reviewing the Commission's decision there are, therefore, two basic questions to be resolved: was Farmington required to be licensed under the 1920 Act and, if not, do the 1935 amendments have retroactive effect?

The main thrust of the Federal Water Power Act of 1920 was to establish the Federal Power Commission and to give it certain powers, including § 4(d),[4] the authority to issue licenses for construction of projects in the navigable waters of the United States. Under the Rivers and Harbors Appropriation Act of 1899,[5] Congress had prohibited making any obstruction in navigable waters without its consent, and § 4(d) of the 1920 Act provided a convenient way of obtaining that permission. There was nothing in the 1920 Act, however, except for an ambiguous reference in § 23 to be discussed below, that required anyone to get a license at all before constructing a dam or other obstruction across a stream. Any prohibitions then in the law were contained in the 1899 Act.

Section 23 of the 1920 Act provided that any person who intended to construct any project in nonnavigable waters could, in his discretion, file a declaration of this intention with the Commission. The Commission would then make an investigation of the proposed construction to determine if the interests of interstate or foreign commerce would be affected; if so, no construction could go forward until a license had issued.

This section, which began as a Senate amendment to the original bill, was accepted by the House on the recommendation of the Conference Committee that

3. § 4(g), 16 U.S.C.A. § 797(g), reads as follows:

"The Commission is authorized and empowered—

(g) Upon its own motion to order an investigation of any occupancy of, or evidence intention to occupy, for the purpose of developing electric power, public lands, reservations, or streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States by any person, corporation, State, or municipality and to issue such order as it may find appropriate, expedient, and in the public interest to conserve and utilize the navigation and water-power resources of the region."

4. § 4(d), 41 Stat. 1065, 1066, now § 4(e) of the amended Act, 16 U.S.C.A. § 797(e), read, in pertinent part, as follows:

"The Commission is authorized and empowered—

(d) To issue licenses to citizens of the United States, or to any association of such citizens, or to any corporation organized under the laws of the United States or any State thereof, or to any State, or municipality for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power across, along, from, or in any of the [navigable waters of the United States], or upon any part of the public lands and reservations of the United States (including the Territories), or for the purpose of utilizing the surplus water or water power from any Government dam, except as herein provided . . . ."

5. 33 U.S.C.A. § 403.

"[t]his amendment seeks to prescribe how a stream of doubtful navigability may be determined as within the provisions of the law. . . ." [6] There has long been wide acceptance by the courts,[7] the commentators[8] and the Commission itself[9] of the conclusion that § 23 was designed merely to provide a discretionary method whereby a person could determine whether or not his proposed construction was on navigable waters and therefore subject to the provisions of the Rivers and Harbors Act of 1899.

■ Because its dam was across non-navigable waters, Farmington did not run afoul of the 1899 Act; and, because it chose not to file a declaration of intention under § 23, the Commission had no power to determine whether or not the project would affect interstate commerce and therefore require a license.

The Commission's insistence that the 1920 Act can now be read to have required a license on and after its passage is groundless and completely untenable.[10]

It is tantamount to the assertion that because Congress gave the Commission jurisdiction to issue licenses on voluntary application by the one undertaking such a project on a nonnavigable stream,[11] it also gave the Commission the power to make such licenses mandatory. Yet, there is not a word in either the statute itself or its legislative history [12] which even implies that it would be illegal for one who had made no discretionary filing to maintain an unlicensed project on a nonnavigable stream. In trying to avoid the clear wording of § 23 that one could *in his discretion* file a declaration of intention, the Commission draws upon Federal Power Commission v. Union Electric Company, 381 U.S. 90, 85 S.Ct. 1253, 14 L.Ed.2d 239 (1965) (the *Taum Sauk* decision), for the proposition that filing and licensing requirements are two separate items. While it is true that the Court in *Taum Sauk*, in a completely different context, drew a distinction between filing and licensing requirements, it also

6. H.R.Rep. No. 910, 66th Cong.2d Sess. 6, 13 (1920).

7. United States v. Appalachian Electric Power Co., 23 F.Supp. 83, 113 (W.D.Va. 1938), aff'd 107 F.2d 769, 795 (4 Cir. 1939), rev'd on other grounds, 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940).

8. R. Baum, The Federal Power Commission and State Utility Regulation, 118 (1942).

9. See comments of Solicitor General Dozier DeVane before the House Committee on Interstate and Foreign Commerce, Hearings on H.R. 5423, 74th Cong. 1st Sess., at 468 (March 9, 1935), [hereinafter referred to as House Committee Hearings].

10. This is the first time in the 52 years since the passage of the 1920 Act that the Commission has ever attempted to force a license upon a project built on a nonnavigable stream in the 1920–1935 period.

11. Before 1935 it was not completely clear that the Commission could issue licenses for projects on nonnavigable streams because under § 4(d) of the 1920 Act, the Commission was only authorized to grant licenses for projects in navigable waters. In practice, however, the Commission took

implied authority from § 23 and issued licenses anyway.

12. The following dialogue in the Senate debates on § 23 is strong refutation of the Commission's position:

"Mr. King. Is there not something in the bill . . . that requires the citizens of the State, those who live upon [a nonnavigable river], to obtain a license from the Federal Government for the construction of power plants upon the stream?"

"Mr. Jones of Washington. There is not. There are provisions in the bill which permit people to get a permit, but it does not require them to do so. There is not a prohibitory provision in the bill with reference to the construction of dams in streams, but there are provisions in the bill under which, if a person wants to be sure he will not be interfered with under the law to which the Senator referred and which he read [The Rivers and Harbors Act of 1899], he can come to the Commission and ask for a permit and get it upon certain conditions. But if they want to take the chances [that the stream is nonnavigable], they can go on and put a dam in the stream, just as they can do now." 59 Cong.Rec. 7729 (1920).

said that prior to 1935, one could decline a file a declaration of intent and could proceed to build a dam in nonnavigable waters with complete impunity, 381 U.S. at 109, 85 S.Ct. 1253. Therefore, under the 1920 Act, Farmington had no duty to acquire a license for its project, and, unless the 1935 amendments provided otherwise, it has no duty to do so now.

The new § 23(b) made a licensing requirement part of the *Water Power Act* by providing that it would be unlawful to construct, operate, or maintain any project in *navigable* waters without a license from the Commission; and the new section also made it mandatory for anyone planning to construct a project in *nonnavigable* waters to file a declaration of intention with the Commission, which would in turn determine whether or not the project would affect interstate or foreign commerce and therefore have to be licensed. In other words, after 1935 one initiating a project no longer had the choice to refrain from filing a declaration of intention with the Commission, and the only new projects not requiring licenses were those on nonnavigable waters which the Commission found would not affect interstate commerce.

Absent unequivocal expression to the contrary, the courts give only prospective application to statutes, Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); Union Pacific R. Co. v. Laramie Stock Yards, 231 U.S. 190, 199, 34 S.Ct. 101, 58 L.Ed. 179 (1913). Here, there is nothing in the statute itself, its legislative history, or its prior construction to indicate that Congress intended retroactive application.

Section 23(b) states that any person *intending* to construct a dam or other project in nonnavigable waters must file a declaration of intention and that no person shall operate *such* dam or other project, *i.e.*, one to be constructed, without a license, if it is found by the Commission to affect interstate commerce. These words quite clearly indicate a prospective view, and are in explicit contrast to the first part of § 23(b) which reads that no person shall construct, operate, or maintain any project in navigable waters without a license.

Although the legislative history contains little on the subject, there is no indication that Congress intended that the filing requirement for nonnavigable waters was to be retroactive. Federal Power Commissioner Clyde Seavey, in his testimony before the House Committee on Interstate and Foreign Commerce, stated that under the amended section "every person *intending* to construct a project which might conceivably affect any navigable waters would be under the duty of coming to the Commission."[13] (Emphasis added.) The then Solicitor General of the Commission, Dozier DeVane, used the same "intending to construct" language in his Senate Hearing Testimony.[14] There is

---

13. House Committee Hearings, *supra* note 9, at 391.

14. Hearings on H.R. 5423, before the Senate Committee on Interstate Commerce, 74th Cong. 1st Sess., at 238, (April 19, 1935). See also DeVane's comments at the House Committee Hearings, *supra* note 9, at 489.

The Commission has pointed to Solicitor DeVane's testimony at the House Committee Hearings, at 489, in relation to his explanation of that part of § 23(b) which reads that no one shall "construct, maintain, or operate such dam" until he has applied for a license. He suggested that without the addition of "maintain or operate" to the section, it might be argued that "in those cases that the project having been completed, the provisions of section 23 are not applicable and we hope to prevent that from arising in the future."

The Commission claims that this shows the intent to apply § 23(b) retroactively, but the testimony is at best ambiguous and it is not persuasive on the intent of Congress. It is more likely that DeVane meant that if someone started a project after 1935 and completed it without applying for a license, he would still be in violation of the amended § 23(b).

no suggestion whatsoever in either the Senate[15] or the House Reports[16] that the new § 23(b) was to be applied retroactively; in fact, both reports stated that the new subsection would require every person *intending* to construct a project that might conceivably affect navigable waters to file a declaration.

Finally, prior judicial construction has held that the portion of § 23(b) referring to nonnavigable waters has no retroactive effect, United States v. Appalachian Electric Power Co., 107 F.2d 769, 795 (4 Cir. 1939), rev'd on other grounds, 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); *see also*, Niagara Mohawk Power Corp. v. Federal Power Comm., 126 U.S.App.D.C. 376, 379 F.2d 153, 155 (1967).

The other significant amendment to the Federal Water Power Act in 1935 was the addition of § 4(g), which gave the Commission the power, upon its own motion, to investigate and issue appropriate orders concerning any occupancy of streams over which Congress had jurisdiction. Although both the Presiding Examiner and the Commission have rejected this section as a basis for requiring Farmington to be licensed, some mention of it should be made in light of the Commission Staff's attempted reliance upon it.

Prior to 1935, the Commission had no authority to investigate projects in either navigable or nonnavigable waters, unless a declaration of intention to build had first been filed with it. Section 4(g) was added to increase the enforcement powers of the Commission. The legislative history[17] makes quite clear, however, that this subsection was only designed to permit the Commission to proceed on its own, and it was not a general delegation of authority to require licenses apart from other statutory standards.

The order of the Federal Power Commission is vacated and the Commission is directed to enter an order declaring that the petitioner's dam and appurtenant facilities need not be licensed.

15. S.Rep. No. 621, 74th Cong., 1st Sess. 47 (1935).

16. H.R.Rep. No. 1318, 74th Cong., 1st Sess. 26 (1935).

17. Senate Report, *supra* note 15, at 43; House Report, *supra* 16, at 23; House Committee Hearings, *supra* note 9, at 475.