Jane MONELL et al.,
Plaintiffs-Appellants,

v.

DEPARTMENT OF SOCIAL SERVICES
OF the CITY OF NEW YORK et al.,
Defendants-Appellees.

No. 407, Docket 75–7333.

United States Court of Appeals,
Second Circuit.

Argued Dec. 19, 1975.

Decided March 8, 1976.

Oscar Chase and Gregory Abbey, Brooklyn, N. Y. (Nancy Stearns, Center for Constitutional Rights, New York City, of counsel), for plaintiffs-appellants.

L. Kevin Sheridan, New York City (W. Bernard Richland, Corp. Counsel of New York City, of counsel), for defendants-appellees.

Before HAYS, TIMBERS and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal by the plaintiffs from an order of the United States District Court for the Southern District of New York, Charles M. Metzner, *Judge*, dismissing their complaint. 394 F.Supp. 853 (S.D.N.Y.1975). The plaintiffs are female employees of the New York City Department of Social Services ("Department") and of the New York City Board of Education ("Board") suing on behalf of themselves and other female employees in city agencies similarly situated. The essence of the complaint is that rules and regulations of the city agencies formerly compelled pregnant employees to take unpaid leaves of absence before medical reasons required them to do so, and that such rules and regulations were unconstitutional.

The defendants Sugarman, former Commissioner of the Department of Social Services, Scribner, former Chancellor of the City School District of the City of New York, and Lindsay, former Mayor, are sued in their official capacities (Amended Complaint ¶ 24). Jurisdiction is alleged under the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343(3), as well as under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Judge Constance Baker Motley had previously determined that the action could be maintained as a class action. 357 F.Supp. 1051 (S.D.N.Y.1972).

The plaintiffs sought declaratory and injunctive relief and damages for "the deprivation of their right to be employed, including but not limited to wages lost." No amount of damages was alleged.[1] The defendants moved to dismiss the action, or, in the alternative, for an order granting summary judgment. They also moved to vacate the order granting class action status, or, in the alternative, to compel the plaintiffs to pay for the class action notice if the action were allowed to continue as a class

---

1. Since there is no claim alleged under 28 U.S.C. § 1331 and no allegation of the jurisdictional amount, we do not consider whether such a claim would lie. Cf. *City of Kenosha v. Bruno*, 412 U.S. 507, 516, 93 S.Ct. 2222, 2228, 37 L.Ed.2d 109, 118 (1973) (Brennan, *J.*, concurring).

action. The plaintiffs cross-moved for summary judgment. Judge Metzner dismissed the complaint. 394 F.Supp. 853 (S.D.N.Y. 1975).

██ With respect to the requests for injunctive and declaratory relief, he noted that in the fall of 1971, the Department had changed its maternity leave policy to provide that no woman need report her pregnancy or take maternity leave as long as she is able to continue to perform her job and desires to do so. The policy change became effective on January 29, 1972. The Board of Education similarly changed its bylaws effective September 1, 1973. The judge therefore dismissed as moot the claims for equitable relief by way of injunction or declaratory judgment. We agree that these claims are moot and accordingly affirm. See *Nieves v. Oswald*, 498 F.2d 802, 813–15 (2 Cir. 1974); cf. *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

The District Judge also dismissed the claims for back pay covering the periods for which plaintiffs allege they could have worked after they were forced to take maternity leave on the ground that there was no subject matter jurisdiction for the award of back pay either under Title VII or under § 1983. Judge Metzner determined that the 1972 amendment to Title VII, Pub.L.No.92–261, § 2(1) (amending Title VII § 701(a), 42 U.S.C. § 2000e(a)), which broadened the definition of "person" under the Act so as to include "governments, governmental agencies [and] political subdivisions," could not be applied retroactively. He therefore dismissed the claim for relief pursuant to Title VII, since all the acts of discrimination claimed to have been committed against the named plaintiffs occurred before the 1972 amendment to Title VII. The court also concluded that any attempt to use § 1983 as a basis of obtaining monetary relief against the named city officials in their official capacities would circumvent the decision of the Supreme Court in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that municipalities cannot be sued for damages under

§ 1983, and accordingly dismissed the claim for relief brought under that section.

Appellants contend that the court erred in dismissing the action for lack of jurisdiction under the Civil Rights Act (§ 1983) and in failing to give retroactive effect to the amendment of Title VII in 1972.

I

██ Appellants are correct in their contention that, under the Title VII amendment of 1972, municipalities and their subdivisions are employers within the meaning of the Act. They also correctly state that one of the remedies provided for violation of the Act is the award of back pay. Title VII, § 706(g), 42 U.S.C. § 2000e–5(g). Back pay is specifically made "payable by the *employer*, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice." *Id.* (emphasis added). There is no statutory warrant for such an award against a public official, however. Accordingly, so far as the Title VII claim is concerned, employees discriminated against may *henceforth* obtain an award of back pay against the city itself (but not against individual officials).

██ We must conclude, however, that the 1972 amendment to Title VII does not apply retroactively so as to permit an award of back pay against the city in this case. The same law, Pub.L.No.92–261, section 2(1) of which amended the definition of "person" to include "governments, governmental agencies [and] political subdivisions," also struck out in section 3 the exemption for the employment of individuals engaged in educational activities of nonreligious educational institutions. In *Weise v. Syracuse University*, 522 F.2d 397, 410–11 (2 Cir. 1975), we met the question whether Title VII was applicable to discrimination occurring before the lifting of the exemption for educational institutions. We held that it was not retroactive, for it was "a statute creating new rights where none had previously existed." Judge Smith went on to note that "[t]he manifest injustice of such *ex post facto* imposition of civil liability is reflected in the general rule of con-

struction that absent clear legislative intent statutes altering substantive rights are not to be applied retroactively. *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, [621], 11 L.Ed.2d 576 [584] (1964); *Farmington River Power Co. v. Federal Power Commission*, 455 F.2d 86, 90 (2d Cir. 1972); *Herman Schwabe, Inc. v. United Shoe Machinery Corp.*, 274 F.2d 608, 610 (2d Cir.), *cert. denied*, 363 U.S. 811, 80 S.Ct. 1247, 4 L.Ed.2d 1153 (1960)." 522 F.2d at 411.

We see no valid ground for distinguishing the sex-discrimination claim in *Weise* from similar claims against the city or the Board of Education based upon a retroactive application of Title VII. Indeed, the Supreme Court in *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639 n. 8, 94 S.Ct. 791, 796, 39 L.Ed.2d 52, 60 (1974), expressed the view that the statutory amendments passed after the alleged discriminations in *LaFleur* had been committed "are, of course, inapplicable to the cases now before us."

In *Brown v. General Services Administration*, 507 F.2d 1300, 1304–06 (2 Cir. 1974), *cert. granted*, 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975), we did hold § 717(c) of Title VII, 42 U.S.C. § 2000e–16(c), to be retroactive. But this was merely a procedural section relating to *federal* employees which gave them a limited right to judicial review of Title VII claims before administrative remedies were exhausted. Similar administrative remedies had previously been available to enforce rights provided by Title VII. In the case of city employees, on the other hand, entirely new substantive rights were created by the amendment to Title VII. We are constrained to hold, as a consequence, that back pay may not be awarded against the city or the Board of Education under Title VII for discrimination that occurred before the 1972 amendment. The argument that, as in *Brown*, there was already a substantive right not to be forced to take a maternity leave arbitrarily is not well-taken. To support their position, appellants cite *Green v. Waterford*

*Board of Education*, 473 F.2d 629 (2 Cir. 1973), and *Cleveland Board of Education v. LaFleur, supra*. But these cases were not decided until 1973 and 1974, respectively. In any event, no remedy existed prior to 1972 by which appellants could secure monetary relief to compensate them for the alleged discrimination.[2]

We are thus compelled to conclude that plaintiffs cannot maintain their action under the provisions of Title VII.

## II

Alternatively, plaintiffs argue that their suit can be maintained under 42 U.S.C. § 1983, which provides that any "person" who, under color of state law, deprives any citizen of his constitutional rights, "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Although the Supreme Court held in *Monroe v. Pape, supra*, 365 U.S. at 187–92, 81 S.Ct. at 484–86, 5 L.Ed.2d at 505–07, and in *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), that municipalities are not "persons" within the meaning of § 1983, the appellants nevertheless argue that the city officials named in their complaint are "persons" for § 1983 purposes, even though they are sued in their official capacities for monetary relief. Furthermore, plaintiffs contend that the defendant Board of Education of the City of New York is itself a "person" and can be sued directly in its own right under § 1983.

## A.

It is common ground that a municipality is not itself a "person" under the Civil Rights Act, *Monroe v. Pape, supra*, 365 U.S. at 187–92, 81 S.Ct. at 484–86, 5 L.Ed.2d at 505–07; *City of Kenosha v. Bruno, supra*, and that a state or county is also not such a "person." See *Moor v. County of Alameda*, 411 U.S. 693, 699–700, 706, 93 S.Ct. 1785, 1790, 1794, 36 L.Ed.2d 596, 604, 608 (1973);

2. See *Weise v. Syracuse University, supra*, 522 F.2d at 411 n. 23, where we noted that an Executive Order had prohibited discrimination by the University prior to 1972, but that plaintiffs could not be considered as having a substantive right to recover damages under that Executive Order since the Order could be enforced only by the Department of Labor.

*Zuckerman v. Appellate Division*, 421 F.2d 625, 626 (2 Cir. 1970); *United States ex rel. Gittlemacker v. County of Philadelphia*, 413 F.2d 84, 86 (3 Cir. 1969); *Williford v. California*, 352 F.2d 474, 476 (9 Cir. 1965). By like token, a department of such government is not a "person", as is conceded by appellants here with respect to the Department of Social Services of the City of New York.

While appellants concede that the Department of Social Services, being a department of the city, is not itself a "person" under § 1983, they argue, nevertheless, that the Board of Education is such a "person" and is therefore suable directly for back pay. Appellants argue that the Board of Education is an independent body and not merely an arm of the city like the Department of Social Services.

When we consider so-called independent agencies of the state or city, we must recognize that not all have the same character, function or degree of independence. We know of no rule of thumb that may be deemed controlling on the question whether independent agencies are to be considered "persons" for the purposes of § 1983.

Thus, the State University of New York is not a "person." *Blanton v. State University of New York*, 489 F.2d 377, 382 (2 Cir. 1973). The New York City Employees' Retirement System has been held not to be a "person." *Surowitz v. New York City Employees' Retirement System*, 376 F.Supp. 369, 371–72 (S.D.N.Y.1974) (Pollack, *J.*). Nor is the New York City Transit Authority. *Sams v. New York State Board of Parole*, 352 F.Supp. 296, 298–99 (S.D.N.Y. 1972) (Weinfeld, *J.*). On the other hand, the State Housing Finance Agency has

been said to be a "person" within § 1983, though in that case there was also jurisdiction over it under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), sovereign immunity having been waived.[3] *Forman v. Community Services, Inc.*, 500 F.2d 1246, 1255 (2 Cir. 1974), *rev'd on other grounds sub nom. United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) (for opinion below, see 366 F.Supp. 1117, 1120 (S.D.N.Y.1973) (Pierce, *J.*)). We need not consider whether the State Housing Finance Agency is a "person" under § 1983, for that agency is not before us.[4] To the extent that the language of the *Forman* opinion may be read to imply that *all* "agencies" are persons under § 1983, 500 F.2d at 1255, we are not bound by the broad nature of the generalization and we doubt that it was so intended.

We think that the Board of Education is no more a "person" than the State University, the City Employees' Retirement System or the City Transit Authority. While the Board of Education has certain independent powers to manage the school system, it performs a vital governmental function in so doing, and, significantly, while it has the right to determine how the funds appropriated to it shall be spent, see *Divisich v. Marshall*, 281 N.Y. 170, 173–74, 22 N.E.2d 327, 328–29 (1939), it has no final say in deciding what its appropriations shall be.

All funds for use of the Board of Education must be appropriated by the city. Section 2576(5) of the New York Education Law provides that the Board of Education must prepare an annual estimate of its expenses for the ensuing fiscal year which

---

**3.** Though the definition of "person" in § 3(a)(9) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(9), was more limited, and did not include governmental agencies until the 1975 amendment of § 3(a)(9), the Securities Act of 1933 has always included in its definition of "person" "a government or political subdivision thereof." Securities Act of 1933, § 2(2), 15 U.S.C. § 77b(2). Since the Supreme Court reversed the holding of the Court of Appeals that a share in a cooperative housing project is a "security," it did not have to deter-

mine whether there was federal jurisdiction under § 1983. See 421 U.S. at 846 n. 11, 95 S.Ct. at 2058, 44 L.Ed.2d at 629.

**4.** The State Housing Finance Agency was described, in the court's discussion of sovereign immunity, as one that "has the express authority to sue and be sued; it acts only as a credit or financing entity; it apparently has no power to take property in its own name or in the name of the State." 500 F.2d at 1256.

shall be submitted to the Mayor. The statute further provides that if the amount requested in the estimate is above a certain sum, then the excess amount requested shall "be subject to such consideration and to such action by the board of estimate, the council, and the mayor as that taken upon departmental estimates submitted to the mayor." Thus, the funds of the Board of Education are public funds appropriated for its use as if it were a department of the city government.

Furthermore, § 2580 of the Education Law provides that all public moneys appropriated to the use of the Board of Education shall be paid into the treasury of the city. Similarly, § 2557 of the Education Law provides that the Board of Education shall take title to all of its real property in the name of the city. Thus, it is clear that the affairs of the New York City Board of Education are intimately connected with the city itself.

Appellants argue, however, that several Supreme Court and Second Circuit cases have held that a Board of Education is a "person" for purposes of § 1983. They cite *Cleveland Board of Education v. LaFleur, supra; Lombard v. Board of Education,* 502 F.2d 631 (2 Cir. 1974), and *Green v. Waterford Board of Education, supra.* These cases were actions brought under § 1983 against Boards of Education, and were decided on their merits without any jurisdictional problem being perceived.

We do not find these decisions to be binding precedents. In none of the cases was the attention of the court called to the possible lack of subject matter jurisdiction. As the Supreme Court said in *In re Nielsen,* 131 U.S. 176, 184, 9 S.Ct. 672, 675, 33 L.Ed. 118, 120 (1889), "[i]f we have seemed to hold the contrary in any case, it has been from inadvertence." In point of fact, moreover,

in every case individual defendants were named in addition to the Board of Education. In *Cleveland Board of Education v. LaFleur,* the other defendants designated as "et al." probably were school officials whose presence conferred sufficient jurisdiction in any event.[5] In *Lombard v. Board of Education,* the principal of the school who recommended the discharge of Lombard was a named defendant. And in *Green v. Waterford Board of Education,* the Superintendent of Schools was named as a defendant. There was no discussion of the issue in any of these cases, and certainly no reasoned determination of it. Cf. *City of Kenosha v. Bruno, supra,* 412 U.S. at 512, 93 S.Ct. at 2225, 37 L.Ed.2d at 114.

We hold that the Board of Education *itself* is not a "person" within the meaning of § 1983 and that this court, accordingly, has no jurisdiction to award any relief against it under the Civil Rights Act.

## B.

■ We must, however, consider appellants' claim that the officials named in their complaint may be sued in their official capacities under § 1983 for damages, even though the money would have to come out of the city treasury.

■ There is no doubt that municipal and state officials, sued in their official capacities, are "persons" within the meaning of § 1983 when they are sued for injunctive or declaratory relief. See *Wright v. Chief of Transit Police,* 527 F.2d 1262, 1263 (2 Cir. 1976); *Gresham v. Chambers,* 501 F.2d 687, 690 (2 Cir. 1974); *Erdmann v. Stevens,* 458 F.2d 1205, 1207–08 (2 Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972). It is also true that individual officials who violate the civil rights of plaintiffs may be required to respond in damages for their tortious conduct

5. The jurisdictional question was apparently so far from the central thought that neither the District Court opinion, *LaFleur v. Cleveland Board of Education,* 326 F.Supp. 1208 (E.D. Ohio 1971), nor the Court of Appeals opinion, 465 F.2d 1184 (6 Cir. 1972), mentions who the et al. defendants were. The District Court opinion in the companion case of *Cohen v.*

*Chesterfield County School Board,* 326 F.Supp. 1159 (E.D.Va.1971), does tell us that the Superintendent of Schools was an individual defendant though the members of the County School Board apparently were not. No question of subject matter jurisdiction appears to have been raised or discussed by the Supreme Court in either case.

out of their own pockets. *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90, 97 (1974).[6]

In this case, unlike *Scheuer*, there are no allegations that the individual defendants acted outside the scope of their offices or in an arbitrary manner. The individual defendants are sued here solely in their official capacities.

Appellants would have us merge two discrete conceptions to award relief. They would have us entertain suit against the official who committed an unconstitutional act, without malice, solely *ex officio*, even though from the nature of the relief sought—back pay—an award must come out of the public treasury of the Board of Education.

■ Recognizing that the Eleventh Amendment, which bars suits against states in the federal courts, has no direct application to cities, see *Edelman v. Jordan*, 415 U.S. 651, 667 n. 12, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662, 675 (1974), we nevertheless find a compelling analogy from cases arising under the Amendment.

In the landmark case of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that a state official threatening to enforce an unconstitutional state statute could be sued for injunctive relief despite his contention that he was merely a representative of the state and that, accordingly, a suit against him would be a suit against the state, which is barred by the Eleventh Amendment. The fiction upon which the *Young* decision is supported is that a suit against a state officer to restrain him from taking action in his official capacity is a suit against the individual officer and not against the state.

■ An action for money damages, as distinct from a suit for injunctive relief, can hardly be said "not [to] affect the state in its sovereign or governmental capacity," 209 U.S. at 159, 28 S.Ct. at 454, 52 L.Ed. at 729, if the state is required to pay the

judgment. And, in such case, the bar of the Eleventh Amendment applies, even though the named defendant is the official rather than the state. See *Edelman v. Jordan, supra*, 415 U.S. at 663, 94 S.Ct. at 1355–56, 39 L.Ed.2d at 672–73; *Kennecott Copper Corp. v. State Tax Commission*, 327 U.S. 573, 577, 66 S.Ct. 745, 747, 90 L.Ed. 862, 866 (1946); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 462–64, 65 S.Ct. 347, 349–50, 89 L.Ed. 389, 393–94 (1945). See also *Fitzpatrick v. Bitzer*, 519 F.2d 559, 563–64 (2 Cir. 1975), *cert. granted*, 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975) (No. 75–251); *Wilkerson v. Meskill*, 501 F.2d 297 (2 Cir. 1974). As the Court recently noted, "the doctrine of *Ex parte Young* is of no aid to a plaintiff seeking damages from the public treasury." *Scheuer v. Rhodes, supra*, 416 U.S. at 238, 94 S.Ct. at 1687, 40 L.Ed.2d at 97. The Court has established the principle, moreover, that in Eleventh Amendment cases "the nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding," and that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury, supra*, 323 U.S. at 464, 65 S.Ct. at 350, 89 L.Ed.2d at 394.

There is no logical way to avoid a similar result when the damages which are sought in a § 1983 action will have to be paid by a city that was held not to be amenable to such an action in *Monroe v. Pape, supra*. As the legislative history recited by Mr. Justice Douglas demonstrates, municipalities were simply not to be subjected to damage suits under the Civil Rights Act. The fiction that permits equity relief under *Ex parte Young* loses its validity, as we have seen in the Eleventh Amendment cases, when the public body which is not amenable to suit is requested to pay the

---

**6.** In *Scheuer*, the Supreme Court treated the action for money damages as one "to impose individual and personal liability on the *named defendants*." It was only on this "favorable reading" that the action was held not to be barred by the Eleventh Amendment pursuant to *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

judgment. Just as the Congress which enacted the Eleventh Amendment in order to overrule *Chisholm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), meant to protect the treasuries of the states, so the Reconstruction Congress which enacted the Civil Rights Act sought to protect municipal treasuries. The mere substitution of the name of the official for the name of the city in the complaint cannot be used as a subterfuge to circumvent the intent of Congress. Thus, we must consider the suit at hand to have been brought directly against the City and the Board of Education, which, as we have seen, are not "persons" for purposes of § 1983. We are therefore without jurisdiction to hear this suit.[7]

In answer to all this, appellants contend that despite the logical implications of *Monroe v. Pape,* such grants of back pay have actually been upheld. They point out that in *Cohen v. Chesterfield County School Board,* the companion case to *Cleveland Board of Education v. LaFleur, supra,* in which the Supreme Court held mandatory

pregnancy leave rules to be unconstitutional, the District Judge whose decision was ultimately affirmed had actually awarded back pay. 326 F.Supp. 1159, 1161 (E.D.Va. 1971). They rely on the statement of Mr. Justice Stewart that "[t]he District Court held that the school board regulation violates the Equal Protection Clause, and granted appropriate relief." 414 U.S. at 638, 94 S.Ct. at 795, 39 L.Ed.2d at 59. They seize upon the word "appropriate" as a reasoned view of the Supreme Court that back pay, the relief awarded below, is "appropriate." We do not agree. The sentence quoted was merely part of the statement of facts in Mr. Justice Stewart's opinion. Certiorari was granted only "to resolve the conflict between the Courts of Appeals regarding the constitutionality of such mandatory maternity leave rules for public school teachers," *id.,* and the discussion in the opinion nowhere adverts to the award of back pay.[8]

■ Plaintiffs also place reliance on *Incarcerated Men of Allen County Jail v.*

---

7. Our decision accords with the results reached by the numerous district courts that have considered the question. See *Westberry v. Fisher,* 309 F.Supp. 12, 18 (D.Me.1970) (Gignoux, *J.*); *Bennett v. Gravelle,* 323 F.Supp. 203, 210–11 (D.Md.), aff'd, 451 F.2d 1011 (4 Cir. 1971), *petition for cert. dismissed,* 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972); *Conway v. Alfred I. DuPont School District,* 333 F.Supp. 1217, 1218–19 (D.Del.1971), quoting *Mathias v. New Castle County Vocational Technical School District,* No. 4073 (D.Del. Sept. 22, 1971) (Stapleton, *J.*); *Francis v. Davidson,* 340 F.Supp. 351, 370 (D.Md.) (three-judge court) (Frank A. Kaufman, *J.*), aff'd mem., 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972); *Hayes v. Cape Henlopen School District,* 341 F.Supp. 823, 829 (D.Del.1972); *O'Brien v. Galloway,* 362 F.Supp. 901, 905 (D.Del.1973); *Hahn v. Ingram,* 362 F.Supp. 982, 985 (D.Del.1973); *Veres v. County of Monroe,* 364 F.Supp. 1327, 1331 (E.D.Mich.1973); *Rochester v. Baganz,* 365 F.Supp. 179, 183 (D.Del.1973); *Klein v. New Castle County,* 370 F.Supp. 85, 91–92 (D.Del.1974); *Hines v. D'Artois,* 383 F.Supp. 184, 189–90 (W.D.La.1974); *Needleman v. Bohlen,* 386 F.Supp. 741, 745–46 (D.Mass.1974); and *Patton v. Conrad Area School District,* 388 F.Supp. 410, 417 (D.Del.1975).

To the extent that the court in *Conway v. Alfred I. DuPont School District, supra,* and in the later case of *Boyce v. Alexis I. duPont School District,* 341 F.Supp. 672, 674–75

(D.Del.1972), indicated that damages could be recovered against individual defendants in their official capacities if it were established that the officials acted in bad faith, we believe that it erred and that it misinterpreted Judge Stapleton's opinion in the *Mathias* case. A finding of bad faith could result in a judgment against the officials in their *individual* capacities, but not in their *official* capacities.

8. Appellants further rely on the case of *Sugarman v. Dougall,* 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973). They argue that the plaintiffs in *Sugarman* sued under § 1983 for both injunctive relief and lost wages, and that neither the three-judge district court, *Dougall v. Sugarman,* 339 F.Supp. 906 (S.D.N.Y.1971), nor the Supreme Court questioned the propriety under § 1983 of the claim for damages. While it is true that the amended complaint in *Sugarman* prayed that the court "[g]rant each plaintiff damages of $10,000 as represented by lost earnings," this claim was apparently not pressed at trial. The District Court granted only injunctive and declaratory relief, and the Supreme Court was thus not faced with the issue of whether monetary relief against the named officials was permissible under § 1983.

Another case relied on by plaintiffs is *Calo v. Paine,* 521 F.2d 411, 413 (2 Cir. 1975). In *Calo* we held that an action under § 1983 could be brought against municipal officials who, as appears from the caption of the case in the dis-

*Fair,* 507 F.2d 281 (6th Cir. 1974), which held that persons who were successful in obtaining an injunction against a county sheriff in his official capacity could be awarded *attorneys' fees,* to be assessed against the sheriff in his official capacity and paid out of public funds. That is not the same as awarding damages.[9]

We find ourselves in disagreement with the recent decision of a panel of the Fifth Circuit in *Muzquiz v. City of San Antonio,* 520 F.2d 993, 998–1001 (5 Cir. 1975), which held that individual members of the Firemen's and Policemen's Pension Fund of the City of San Antonio could be sued in their official capacities for monetary relief, despite the fact that any damages awarded would be paid out of the Pension Fund. We agree with the well-reasoned dissent of Judge Godbold, 520 F.2d at 1007–10, that such a result would clearly contravene the jurisdictional bar to suits against municipalities which the Congress that enacted the Civil Rights Act intended to establish.[10]

### III

We think the result we have reached is sound both as a matter of policy and as a matter of logic. Yet, to a certain extent this conclusion may seem an anomaly. The Congress which enacted the 1972 amendment to Title VII appears not to have hesitated to impose direct liability for damages against municipalities *as employers* for violation of the law against employment discrimination. But it did not see fit to make Title VII retroactive.

In the future, employees aggrieved by acts arising as a result of employment discrimination by a city will have direct redress from the city for back pay through the mechanism of Title VII without any need to rely on the Civil Rights Act.

On the other hand, if we try to adjust the grievances of the present plaintiffs by allowing the remedy of back pay under § 1983 alone, we would be broadening the indirect remedy of damages generally against cities, which we are reluctant to do for reasons of precedent and concomitant policy.

There is no claim for reinstatement here. The claim for back pay is not merely an adjunct of equitable relief. It stands simply as a claim for damages which cannot be distinguished from many other claims for violation of civil rights in actions which do not involve employment discrimination.

---

trict court, were sued both in their individual and their official capacities. Furthermore, as we noted, 521 F.2d at 412, the complaint asked both for equitable relief and for back pay and compensatory and punitive damages. We do not, however, interpret *Calo* as holding that city officials are considered "persons" for § 1983 purposes even when they are being sued in their official capacities for damages, as we merely vacated Judge Blumenfeld's grant of summary judgment for the defendant and remanded the case for further proceedings. Since Judge Blumenfeld had not awarded any damages, we were not required to consider whether a federal court has jurisdiction, in a proper case, to award such damages against city officials sued in their official capacities.

Similarly distinguishable is the case of *Sterzing v. Fort Bend Independent School District,* 496 F.2d 92 (5 Cir. 1974). The *Sterzing* court dealt on appeal only with the claim of the plaintiff that he was entitled to the equitable remedy of reinstatement. In remanding, the court stated that it expressed no view on what the remedy should be.

The other cases cited by plaintiffs in their brief are plainly distinguishable. In most of these cases either the defendants were sued in their individual, not their official, capacities, *e. g., Ingraham v. Wright,* 498 F.2d 248, 251–52 (5 Cir. 1974), or only injunctive relief was requested, *e. g., Rochester v. White,* 503 F.2d 263, 266–67 (3 Cir. 1974).

**9.** See *Thonen v. Jenkins,* 517 F.2d 3, 7–8 (4 Cir. 1975), which noted that attorneys' fees are like costs of the action. Our analogous holding in *Fitzpatrick v. Bitzer, supra,* 519 F.2d at 571–72, may be reviewed by the Supreme Court, since a writ of certiorari has been granted. 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975) (No. 75–251).

We note, in passing, that in *Alyeska Pipeline Service, Inc. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court rejected the "private attorney general" rationale used to justify the award of attorneys' fees in *Fair.*

**10.** The Fifth Circuit has decided to have *Muzquiz* reheard *en banc,* along with its companion case of *Warner v. Board of Trustees.* 524 F.2d 1233 (5 Cir. 1975).

We accordingly affirm the decision of the District Court.