William HEESE et al., Plaintiffs,

v.

DeMATTEIS DEVELOPMENT CORP.
et al., Defendants.

No. 73 Civ. 1266.

United States District Court,
S. D. New York.

July 15, 1976.

Richard Weinberger, Garbarini, Scher & De Cicco, New York City, for plaintiffs.

W. Bernard Richland by Charles Olstein, Corp. Counsel, New York City, for defendant Housing and Development Administration of the City of New York.

Michael R. Treaner, Madden, Plunkett, Wetzel & Scott, New York City, James A. Treanor, III, Dow, Lohnes & Albertson, Washington, D. C., for defendants DeMatteis Development Corp., Leon DeMatteis & Sons, Inc., Apartment Development and Management, Inc., Frederick DeMatteis and Alfonso L. DeMatteis as Co-executors of the estate of Leon D. DeMatteis, Frederick DeMatteis, Alfonso L. DeMatteis & Seymour Deutsch.

## OPINION AND ORDER

PIERCE, District Judge.

This is a civil action brought by the plaintiffs on behalf of a class of all of the original residents of a middle-income cooperative housing development consisting of one 20-story apartment house comprised of 351 apartment units. The apartment house, known as Scott Tower [hereinafter, the project], is located in the Borough of the Bronx in the City and State of New York. The complaint alleges that the project was financed, and built pursuant to the provisions of Article II of the New York State Private Housing Finance Law ("Limited-Profit Housing Companies Law", popularly known as the "Mitchell-Lama Act").

Plaintiffs' complaint states seven causes of action against some or all of the defend-

ant [1] arising out of the sale to the plaintiffs of shares in Scott Tower Housing Company (Scott Tower), the corporation which owns and operates the cooperative housing project. The jurisdiction of this Court is said to be based on the securities laws of the United States with respect to the first cause of action which charges the defendants with making numerous misrepresentations and omissions in the Information Bulletin by means of which the shares were sold, and on the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 1343, with respect to the fourth cause of action, which charges the defendants with having deprived the plaintiffs of rights and privileges secured to the plaintiffs by the Constitution and laws of the United States. The remaining causes of action assert claims on behalf of the class and derivative claims on behalf of Scott Tower based on New York State common and statutory law.

The factual allegations of the plaintiffs' complaint are as follows:

The plaintiffs in this action are resident shareholders of the project and were subscribers, together with all members of the class, of 94,250 shares on non-voting common stock of Scott Tower. The defendant DeMatteis Development Corp. (DeMatteis) sponsored the project which was to be owned by Scott Tower Housing Co. and constructed by the defendant Leon DeMatteis & Sons, Inc. (DeMatteis & Sons). The defendant Apartment Development and Management, Inc. (A.D.A.M.) was organized to sell the common stock of Scott Tower. The individual defendants were officers or directors of the various corporate defendants and the defendant Housing and Development Administration of the City of

New York.(HDA) [2] was, for the purposes of the Mitchell-Lama Act, the supervising agency of the Scott Tower cooperative development. As such it was charged with overseeing the construction, sale and management of the project. In performance of these functions the HDA is said to have approved the sponsorship application of DeMatteis, the construction contract entered into between DeMatteis & Sons and Scott Tower to build the housing development, and the sales agency agreement between A.D.A.M. and Scott Tower by which A.D. A.M. would market the shares in Scott Tower.

Beginning prior to May 1965, the defendants published and circulated an Information Bulletin designed to induce the public to subscribe to the shares of Scott Tower. The Information Bulletin stated that the total estimated project cost of the development was $8,042,500; that $942,500 of this amount was to be provided by resident stockholder-subscribers through the purchase of stock; and that the balance was to be financed by a mortgage loan from the City of New York in the amount of $7,100,-000, or in any lesser amount not in excess of 90% of the actual final project cost, whichever was less, and which mortgage loan was to be self-liquidating over a period of fifty years. The Information Bulletin also stated, *inter alia,* that the risk of completing the construction of the project within a stated lump-sum price was on the contractor, DeMatteis & Sons, and that any savings would accrue solely to Scott Tower.

The complaint alleges that in reliance on the statements in the Information Bulletin, the plaintiffs subscribed to and paid for shares of the common stock of Scott Tower.

---

1. The defendants named are DeMatteis Development Corp. (DeMatteis), Leon DeMatteis & Sons, Inc. (DeMatteis & Sons), Apartment Development and Management, Inc. (A.D.A.M.), the Executors of the Estate of Leon D. DeMatteis, Frederick DeMatteis, Alfonso L. DeMatteis, Seymour Deutsch, the Housing and Development Administration of the City of New York (HDA), and Scott Tower Housing Co., Inc. (Scott Tower). The first four causes of action are brought against all defendants except Scott Tower. The fifth and sixth causes of

action are derivative claims brought on behalf of Scott Tower against DeMatteis, DeMatteis & Sons, the Executors of the Estate of Leon D. DeMatteis, Frederick DeMatteis, Alfonso L. DeMatteis, Seymour Deutsch, and HDA. The seventh cause of action is a derivative cause of action against DeMatteis & Sons.

2. The HDA is the successor agency to the Housing and Redevelopment Board of the City of New York which was initially designated as the supervising agency of the project.

However, it is alleged, the defendants' statements in the Information Bulletin were false in that, among other things, the defendants never intended that the risk of completing the construction within the lump-sum price would fall solely on DeMatteis & Sons or that savings in construction costs would accrue solely to Scott Tower. Further, the complaint charges, savings of over $1,000,000 were realized as a result of unauthorized deviation from the specifications and plans, and these savings accrued to the defendants alone. It is alleged, that by allowing the savings in construction costs to accrue to DeMatteis & Sons rather than to Scott Tower, the defendants caused construction costs to be accrued by Scott Tower, and transferred the risk of completing the construction within the projected lump-sum price to Scott Tower, all without notice to the then existing and prospective resident-stockholders of Scott Tower. It is alleged that the plaintiffs and all persons similarly situated have been damaged as a result of the foregoing in that, *inter alia,* they have paid and will be obliged to pay carrying charges greatly in excess of those which were represented in the Information Bulletin.

This action is now before the Court for consideration of the defendants' motions to dismiss the complaint. Specifically, the defendants have argued that the plaintiffs' claims under the federal securities laws must be dismissed because the shares of stock in question are not securities within the meaning of those laws; that the plaintiffs' civil rights claims must be dismissed either because they are not well-pleaded or because they have failed to state a claim; and that the plaintiffs' pendent claims must be dismissed under the authority of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The defendant HDA has asserted the additional defense that it is not a "person" within the meaning of 42 U.S.C. § 1983 and therefore cannot be sued under that statute. These claims will be considered in turn.

■ *Securities Act Claims.* The threshold question with respect to the plaintiffs'

securities law claims is whether this case is controlled by the Supreme Court's decision in *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) and by the subsequent decision of the United States Court of Appeals for the Second Circuit in *Grenader v. Spitz,* 537 F.2d 612 (2d Cir. 1976). For the reasons which follow, the Court concludes that these cases are controlling and that the plaintiffs' federal securities law claims must be dismissed.

In *Forman,* the Supreme Court held that transactions in which the purchaser of shares in a state-subsidized and supervised non-profit housing cooperative acquired the right to lease an apartment in the cooperative were not purchases of securities within the contemplation of the federal securities laws. The Court held that the shares themselves were not "securities" as defined by those statutes, specifically rejecting the so-called "literal approach" which would have them classified as securities simply because they were described as "stock" in the offering statement. The Court also rejected the contention that the shares were "investment contracts" holding that, despite the existence of certain potential sources of income which might have inured to the benefit of the shareholders, the economic realities of the transactions in question were such that the test for what constitutes an investment contract, as set forth in *SEC v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), had not been met. The Court stated that:

> "There is no doubt that purchasers in this housing cooperative sought to obtain a decent home at an attractive price. But that type of economic interest characterizes every form of commercial dealing. What distinguishes a security transaction—and what is absent here—is an investment where one parts with his money in the hope of receiving profits from the efforts of others, and not where he purchases a commodity for personal consumption or living quarters for personal use." *United Housing Foundation, Inc. v. Forman, supra,* 421 U.S. at 858, 95 S.Ct. at 2063.

In attempting to distinguish *Forman* from the instant case, the plaintiffs have argued that *Forman* was not a broad decision applying to all shares of stock in cooperative housing projects, but rather, was a narrow ruling which should be limited to the facts of that case. Such a view cannot be sustained in this Circuit after the decision in *Grenader v. Spitz, supra.* There, the Second Circuit declined to read *Forman* narrowly and held that a sale of stock in a privately-owned and operated New York City apartment house cooperative was not a sale of a security within the meaning of the federal securities laws. Following the reasoning of the *Forman* decision, the Court stated that the reality of the transaction in question was that "The tenants were seeking a place to live and whether their residence be in a publicly or privately financed cooperative residence has no legal significance . . .." At 617.

Whatever merit might have attached to the plaintiffs' arguments that *Forman* should not control here because the developer in this case was seeking a profit from the enterprise and that the "risk-capital" theory of the California Supreme Court[3] should be applied in this case because of the lack of public guarantees to support the purchasers' investment, these arguments cannot survive the Second Circuit's extension of *Forman* to a private cooperative development, unsupported by state funds. Likewise, with respect to the potential sources of income from project-related stores and services, there are no allegations here that any Scott Tower resident was induced to purchase shares because he hoped to receive profits from these sources. See *Grenader v. Spitz, supra* at 617. Rather, it appears that here, as in *Grenader,* the tenants were seeking primarily a place to live. As for the plaintiffs' contention that their claim differs from that in *Forman* because they are claiming not only that they have been forced to pay higher carrying charges, but also that they have been deprived of the actual equity in which they invested—that

is, housing in suitable condition—this contention may distinguish the type of injury claimed here from that in *Forman* but it does not distinguish the nature of the underlying transaction.

The Court concludes, for the reasons stated, that to the extent that the plaintiffs' claims here rely on the federal securities laws, those claims are controlled by *Forman* and *Grenader.* Accordingly, Count 1 of the complaint must be dismissed.

■ *Civil Rights Claim.* Plaintiffs' claims under the Civil Rights Act, 42 U.S.C. § 1983, are contained in Count 4 of the complaint. To prevail under § 1983 the plaintiffs "must prove that the defendant[s], under color of any statute, ordinance, regulation, custom or usage of any state, [have] deprived [them] of a right secured by the Constitution and laws of the United States. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)." *Girard v. 94th St. & Fifth Ave. Corp.,* 530 F.2d 66, 68–69 (2d Cir. 1976), *cert. denied,* —— U.S. ——, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976).

Generally, the plaintiffs claim that the defendants, acting under color of state law, have deprived the plaintiffs of substantive and procedural rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Specifically, the plaintiffs charge that the defendants illegally and improperly deviated from the plans and specifications of the housing development thereby engaging in illegal cost-cutting and delivering to the plaintiff subscribers a building which failed to measure up to the specifications the plaintiffs had been led to expect when they purchased shares in Scott Tower; and that the defendants, illegally and improperly, and without notice to the then existing and prospective stockholder-subscribers of Scott Tower applied the savings in construction costs to the benefit of the developer rather than to the benefit of Scott Tower as provided in the Information Bulletin.[4] The complaint can fairly be read

---

**3.** See *United Housing Foundation v. Forman, supra,* 421 U.S. at 857 n.24, 95 S.Ct. 2051.

**4.** See ¶¶ 27–31, 41–42 of the complaint.

as specifically charging the HDA with having participated in these actions by failing to exercise its statutory duty of supervising the construction, sales, and management of the housing so as to prevent anything from being done which would be improvident or prejudical to the interests of the stockholders or tenants of the housing project.[5]

■ The motion of the defendants other than HDA and Scott Tower, while addressed to all of the claims against each of them, speaks to the plaintiffs' civil rights claims only to the extent that it asserts that they are not well pleaded. The motion of defendant HDA addresses all of the plaintiffs' federal claims and purports to be based on both Rule 12(b)(1) and 12(b)(6). To the extent that either motion asserts that the civil rights claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction, the motions are denied. Applying the minimal standards set forth in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Court is unable to conclude that the plaintiffs' allegations under § 1983 are so frivolous and insubstantial that they are insufficient even to confer jurisdiction on the Court to consider the claims.

■ This leaves the separate question of whether this portion of the complaint states a cause of action on which relief can be granted. See *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). In appraising such a motion, the Court is bound to construe the allegations of the complaint favorably to the pleader and should not dismiss unless it appears that the plaintiffs can prove no set of facts which would entitle them to relief. See *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Weisman v. LeLandais,* 532 F.2d 308, 310–11 (2d Cir. 1976). This admonition applies with particular force to actions

brought under the Civil Rights Act. See *Escalera v. New York City Housing Authority,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

■ Plaintiffs claim they have been deprived of "property" protected by the Fourteenth Amendment in that the defendants, acting under color of law, have delivered to them a building which is inferior to that which they assert they had a right to receive and have subjected them to carrying charges significantly greater than those set forth in the Information Bulletin as a result of their failure to credit savings in construction costs to Scott Tower.[6] In assessing whether these charges state a claim for which relief can be granted, the initial question is whether the property interest asserted by the plaintiffs is one to which they have "a legitimate claim of entitlement" secured by existing laws, rules, or customs, rather than simply "an abstract need or desire." See *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ The Supreme Court has recently stated that "property" or "liberty" interests protected by the Due Process Clause ordinarily must flow from a guarantee under state law or the Constitution. See *Paul v. Davis,* 424 U.S. 693, 699–712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, it is clear that protection may also be accorded to rights of less specific origin. See *Huntley v. Community School Board,* 543 F.2d 979, at 986 n. 8 (2d Cir. 1976); *Caramico v. Secretary of HUD,* 509 F.2d 694, 700 (2d Cir. 1974); *Joy v. Daniels,* 479 F.2d 1236, 1240 (4th Cir. 1973).

The decisions of the courts of this circuit have found an entitlement requiring due

---

**5.** See *id.* and ¶¶ 7 and 8 of the complaint.

**6.** The defendants conceded at oral argument that the events alleged in the complaint constitute state action. Faced with a dispute on the question, the Court would have reached the

same conclusion in view of the use of government funds as subsidies for and to confer benefits upon the private defendants, the pervasive governmental regulation of the project, and the inherently public nature of the program.

process protection with respect to a variety of housing-related interests, a number of which have been other than traditional property interests. See *Caramico v. Secretary of HUD, supra; Lopez v. Henry Phipps Plaza South, Inc.,* 498 F.2d 937 (2d Cir. 1974); *Burr v. New Rochelle Municipal Housing Authority,* 479 F.2d 1165 (2d Cir. 1973); *Escalera v. New York City Housing Authority, supra; Holmes v. New York City Housing Authority,* 398 F.2d 262 (2d Cir. 1968); *Owens v. Housing Authority of City of Stamford,* 394 F.Supp. 1267 (D.Conn.1975). But see *Grace Towers Tenants Association v. Grace Housing Development Fund Co.,* 538 F.2d 491 (2d Cir. 1976); *Langevin v. Chenango Court, Inc.,* 447 F.2d 296 (2d Cir. 1971). Upon analysis of the scope of substantive due process as set forth in these and other decisions cited herein, the Court finds that the complaint here can fairly be read as alleging deprivation of interests which require due process protection.

Plaintiffs have cited no specific source for their alleged entitlement to delivery of a building meeting the particular specifications set forth in the initial plans for the Scott Tower development. The Court notes, however, that the New York State legislature has stated that the policy and purpose underlying the Mitchell-Lama Act is to provide safe and sanitary dwelling accommodations for those persons who qualify for the housing built under the plan. See New York Private Housing Finance Law § 11. The Court finds that the plaintiffs have a statutory entitlement to housing that meets this standard.

Further, it is alleged in the complaint that the Information Bulletin, through which the development was sold to the plaintiffs, represented that construction would meet New York City Building Code requirements. While the Court does not reach the question of whether *any* representation made in the Information Bulletin would extend to purchasers an entitlement to the matters represented, the Court does find that where, as here, a specific representation with respect to the quality of the housing to be provided was made by the developer in the very document used to sell the project and thereby effectuate the legislative scheme designed to provide such housing, purchasers have an entitlement to receive housing that meets the specific standard represented to them.

Accordingly, reading the complaint liberally, as must be done at this stage of the proceedings, the Court concludes that the plaintiffs have effectively alleged that they were denied safe and sanitary housing complying with New York City Building Code requirements. Construed in this manner, the complaint states a cause of action under the Civil Rights Act. The Court notes, however, that the Court does not find that the plaintiffs have an entitlement to a building which conforms to particular plans and specifications. To the extent that future proceedings in this case may reveal that the plaintiffs' claim is simply that the building was less than it might have been, this aspect of the claim may yet be subject to a dispositive motion.

Plaintiffs' claim that they have an entitlement to have any savings in construction costs accrue to the benefit of the Scott Tower Housing Company, with the result that their carrying charges or rentals would be lower, is also based on a specific representation contained in the Information Bulletin. Having considered the Rule 12(b)(6) issues raised, the Court finds that this claim also states a cause of action concerning a matter to which the plaintiffs have an entitlement. The Court does not hold or mean to imply, however, that the plaintiffs have an entitlement to any particular carrying charges or that due process procedures must be applied whenever a change in carrying charges occurs. Indeed, the statutory scheme, which vests sole authority for approval of changes in rental rates in the supervising agency, see New York Private Housing Finance Law § 23(4), would seem to suggest that such procedures would not apply. Cf. *Grace Towers Tenants Association v. Grace Housing Development Fund Co., supra.* The Court rules

here only that, with respect to the question of whether savings on construction costs should accrue to the benefit of Scott Tower, the plaintiffs have stated a cause of action for which relief may be granted. Determination of whether they will prevail regarding such a claim must await further proceedings.

■ The question of whether due process applies is of course separate and distinct from the question of what process is due. See *Board of Regents v. Roth, supra; Grace Towers Tenants Association v. Grace Housing Development Fund Co., supra.* Besides moving to dismiss the complaint, the defendant HDA has moved for summary judgment claiming that even if the plaintiffs have stated a cause of action under the Civil Rights Act, they in fact received whatever process was due them under the circumstances. However, HDA's motion is procedurally defective in that it fails to comply with the requirements of Local Rule 9(g) of this Court, requirements which are essential to the disposition of such a motion. Further, there has been no discovery on this issue and questions exist concerning the HDA's supervisory role in the events alleged in the complaint. For all these reasons, the HDA's motion for summary judgment is denied without prejudice to renewal at an appropriate time.

*HDA as a "person".* The final question presented to the Court in connection with the plaintiffs' federal law claims is whether the HDA is a "person" which can properly be sued as a defendant in this action.

■ The law is clear that municipalities are not "persons" for the purposes of § 1983 actions seeking either damages or equitable relief. See *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960). Similarly, a city department is not a "person". See *Monell v. Department of Social Services of City of New York,* 532 F.2d 259, 263 (2d Cir. 1976). However, as *Monell* clearly states, some "independent" governmental agencies may be "persons" under § 1983 and some

may not, depending on a variety of factors; there is no controlling "rule of thumb". *Id.*

■ HDA has asserted in its motion papers, and plaintiffs have not denied, that any judgment in damages assessed against the HDA will ultimately be paid by the City. HDA has claimed that the agency is therefore not a "person". However, as this Court reads *Monell* and the cases cited therein, the question of whether the agency is a "person" and the question of whether it may be sued for damages are separate. As *Monell* indicates, the answer to the first question may depend on many different factors. The HDA has not given the Court sufficient information about the agency to make an informed judgment possible concerning the various considerations set forth in *Monell* and similar cases. The Court does not consider the fact that a judgment against the agency will fall on the City to be wholly dispositive of the question of whether the agency is a "person". Accordingly, the HDA's motion to dismiss the *entire* civil rights cause of action is denied at this time.

■ However, *Monell* also makes clear the position of this Circuit that even if a defendant is a "person" for the purposes of § 1983, that defendant will not be subject to a suit for damages where any damages awarded against it would be assessed against the municipality which could not itself have been sued in the action. *Id.* at 264–67. While that decision dealt with the question in terms of individuals sued in their official capacities, the Court can perceive no significant difference resulting where the defendant is a municipal agency. Therefore, the defendant HDA's motion to dismiss is granted with respect to the plaintiffs' civil rights cause of action insofar as that claim seeks recovery of damages. The motion is denied with respect to any claim for equitable relief without prejudice to renewal within 45 days from the filing of this opinion on the narrow issue of whether the HDA as an "agency" is a "person" which may be sued for equitable relief under § 1983.

*Pendent claims.* Having dismissed certain of the plaintiffs' federal claims and limited others, the Court must now consider whether pendent jurisdiction can properly be retained over the plaintiffs' various state law causes of action. The doctrine of pendent jurisdiction, which is discretionary, may be exercised to assert jurisdiction over state law claims which "derive from a common nucleus of operative fact" with substantial federal claims. *United Mine Workers v. Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. 1130.

Having examined the pleadings and applied the standards set forth in the *Gibbs* decision, the Court concludes that the plaintiffs' second and third causes of action are primarily related to the federal securities law claims which have now been dismissed. Accordingly, those causes of action are also dismissed. However, the Court concludes that the plaintiffs' fifth, sixth, and seventh causes of action are primarily related to the civil rights cause of action stated in the fourth count of the complaint. Accordingly, with the same limitations as have been imposed on the civil rights claim, the Court retains jurisdiction over the pendent claims asserted in the fifth, sixth, and seventh causes of action.

In sum:

1. The motions of all defendants to dismiss Count 1 of the complaint are granted. The related pendent claims asserted in Counts 2 and 3 are also dismissed.

2. The motion of the defendants, other than HDA and Scott Tower, to dismiss Count 4 of the complaint as not well-pleaded is denied.

3. The motion of the defendant HDA to dismiss Count 4 of the complaint—and the related pendent claims asserted against it in Counts 5 and 6—is granted insofar as these counts assert claims for damages. Insofar as these counts assert claims for equitable relief, the motion is denied without prejudice to renewal within 45 days on the issue of whether the HDA is a "person" which can be sued for equitable relief under § 1983.

4. The motion of the defendant HDA for summary judgment with respect to Count 4 and the related pendent claims against it is denied without prejudice to renewal.

The Court has previously determined, in an order dated September 30, 1975, that this action may be maintained as a class action on behalf of all persons who made the initial purchase of any of the 94,250 shares of Class B common stock in Scott Tower at times surrounding the initial occupancy of the development in 1967, and who actually initially occupied one of the apartments in the development, and who suffered loss or damage by reason of the alleged misrepresentations of defendants. The Court's rulings in this opinion do not affect the validity of that determination. Therefore, plaintiffs are directed to submit a proposed order on notice with respect to the remaining causes of action, incorporating a form of notice to the class in accordance with the requirements of Rule 23(c), F.R.Civ.P.

SO ORDERED.