George ARTHUR et al., Plaintiffs,

v.

Ewald P. NYQUIST et al., Defendants.

No. Civ-1972-325.

United States District Court,
W. D. New York.

Dec. 10, 1976.

For opinion of Court of Appeals rendered on denial of motion to dismiss appeal see 547 F.2d 7.

Richard F. Griffin, Buffalo, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N. Y., Albany (Jean M. Coon, Albany, N. Y., of counsel), for defendants Commissioner of Education and Board of Regents of the State of New York.

Linden & Deutsch, New York City (David Blasband, New York City, of counsel), for defendant Individual Members of Board of Regents, Martin C. Barell, Willard A. Genrich, Emlyn I. Griffith, Joseph C. Indelicato, William Jovanovich, Mary Alice Kendall, Genevieve S. Klein & Louis E. Yavner.

CURTIN, Chief Judge.

On April 30, 1976 this court found that the public schools in Buffalo had been pur-

posely segregated in violation of plaintiffs' fourteenth amendment rights. *Arthur v. Nyquist,* 415 F.Supp. 904 (W.D.N.Y.1976). Also filed that day was a decision allowing the plaintiffs in this case to amend their complaint to add the individual members of the State Board of Regents and the individual members of the Board of Education, in their official capacities, as parties-defendant.[1] 415 F.Supp., at 972.

Eight individual Regents represented by private counsel filed notice of appeal on June 1, 1976 from that part of this court's decision that found the Regents to have violated plaintiff's fourteenth amendment rights and which enjoined them from further such violation, and from that part of the decision that granted plaintiffs' motion to add these individual Regents in their official capacities as parties-defendant.

On June 16, 1976 these same eight Regents asked this court to modify its April 30, 1976 decision to hold that no individual Regent, or the Board itself, was responsible in any manner for the segregation that characterizes the BPSS, to find that the individual Regents should not have been added as parties-defendant, and to dismiss the action as to those eight individual Regents. Because these defendants had filed a notice of appeal, this court was without jurisdiction to consider their motion. Then these Regents stipulated to remand the case for this court's consideration of this motion. In open court on August 17, 1976, the court heard the motion and denied it. This memorandum decision contains the court's reasons for the denial of the defendants' motions.

█ In granting the plaintiffs' motion to add the individual Regents in their official capacities, this court briefly examined the history of 42 U.S.C. § 1983 and the limited subject matter jurisdiction under that statute. Although many suits were apparently brought against school boards per se, *see Swann v. Charlotte-Mecklenburg Board of*

*Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) [*see also* the district court decision at 243 F.Supp. 667 (W.D.N.C. 1965)], and *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), the Supreme Court in *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), and the Second Circuit in *Monell v. Department of Social Services of the City of New York,* 532 F.2d 259 (2d Cir. 1976), have firmly established that a school board is not a person under § 1983. *See also Kornit v. Board of Education,* 542 F.2d 593 (2d Cir. 1976).

Notwithstanding this strict construction of § 1983's subject matter jurisdiction requirements, when a plaintiff performs the requisite procedural formalities and sues the individual members of a school board, the suit then proceeds as if it were against the board as an entity. This makes logical and practical sense because the board only acts as a body. Furthermore, as this court has pointed out before, if only the actions of individual board members could be considered, and individuals held liable for them, corporate entities such as a school board could continually escape liability by changing their membership.

The court considered all the circumstances when it allowed plaintiffs to add the individual Regents in their official capacities. The Regents were ably represented from the beginning of this lawsuit; they first raised the *Kenosha* defense in their post trial briefs; and the individual Regents had full notice of the action. It seemed to the court at the time, and it still seems, that it would have been an injustice to dismiss the case against the Board of Regents and to refuse to allow the plaintiffs to amend their complaint to add the individual Regents in their official capacities only.

█ The Regents also contend that the court erred in finding them jointly liable

1. The April 30 decision spoke of adding the individual members of the Board of Education and the Board of Regents in their individual and official capacities. The court clarified its April 30 ruling on June 10, 1976, when it specifically stated that these Board members were added in their official capacities only.

with the City defendants and the Commissioner of Education for the segregation that permeates the BPSS. The Regents argue that they only make policy and that it is the Commissioner's duty to enforce the policy. Pointing to a provision of New York law that states:

. . . [the Commissioner of Education's] decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. New York Education Law § 310 (McKinney's 1969).

the Regents contend that they are powerless to overturn or modify any action of Commissioner Nyquist. The Regents annexed to their motion papers an opinion by retired New York State Supreme Court Justice Howard T. Hogan which details the strong enforcement powers of the Commissioner, and the inability of the Regents to officially hear an appeal or modify the Commissioner's actions. In sum, the Regents claim that they did all they could within their defined and limited powers and that they should not be held liable for the segregation in the BPSS.

The Hogan treatise is not persuasive. Justice Hogan was asked by the Regents to prepare this article before this case was decided and it appears that the request was made to facilitate the passage of a new law that would give the Regents some statutory appeal power. Be that as it may, the Regents nowhere discuss the fact that the Commissioner serves at their pleasure. N.Y. Education Law § 303 (McKinney's 1969).[2] Ultimately, they do have control over him, and certainly their policy making power could have been utilized to affect the Buffalo situation.

Finally, noting that only one of these eight Regents was elected prior to the institution of this lawsuit, that four were named prior to trial and that three were named post trial, these eight Regents contend that intent to segregate cannot be imputed to officials elected subsequent to the acts or omissions alleged. *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974). In that case, the plaintiffs argued that the Mayor of Philadelphia had discriminated in his discretionary appointments to a particular citizens board. The Supreme Court reversed the Court of Appeals decision which upheld the plaintiff's argument. The Court stated that the appellate court "erred in ordering prospective injunctive relief against the new Mayor in a case devoted exclusively to the *personal appointment policies* of his predecessor." 415 U.S. at 613, 94 S.Ct. at 1329 (emphasis added). In the course of the opinion, the Court noted:

Where there have been prior patterns of discrimination by the occupant of a state executive office but an intervening change in administration, the issuance of prospective coercive relief against the successor to the office must rest, at a minimum, on supplemental findings of fact indicating that the new officer will continue the practices of his predecessor. 415 U.S. at 622, 94 S.Ct. at 1334.

For this proposition, the Court cited *Spomer v. Littleton*, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974), a case in which the plaintiff sought injunctive relief against a state's attorney. The defendant in *Spomer* was later replaced by the voters and his successor argued that the case should be dismissed against him. The Supreme Court stated:

The wrongful conduct charged in the complaint is *personal* to [the original State's Attorney], despite the fact that he was also sued in his then capacity as State's Attorney. No charge is made in the complaint that the policy of the office of State's Attorney is to follow the intentional practices alleged . . . . 414 U.S. at 521, 94 S.Ct. at 689 (emphasis added, footnote omitted).

The Court remanded the case for a determination whether the plaintiff wanted to, and

---

**2.** That the Regents possess ultimate control over the Commissioner is demonstrated by the recent firing of Commissioner Nyquist, effective June 1977. *See* N.Y. Times, Nov. 20, 1976, at 1, col. 1.

whether he should be allowed to, amend the complaint, since the new State's Attorney was never charged with any misconduct by the plaintiff.[3]

Neither of these cases stand for the proposition that the defendants claim. In this case, despite the procedural formalities that require that individual members of the Board be sued, we are dealing nonetheless with an entity and that entity's continuing actions and failures to act. In *Mayor* and *Spomer*, on the contrary, the Court was dealing with specific acts personal to specific individuals. In one case it was a mayor, in the other it was a state's attorney. Neither case involved a corporate body's actions.

For the reasons stated, the court denies the defendant Regents' motions.

After the eight individual Regents brought this motion, the Attorney General moved on behalf of the remaining Regents and the Commissioner of Education to join in this motion. For the reasons stated above, their motion is also denied.

So ordered.

---

**3.** The former State's Attorney was one·of several defendants in the original complaint. The district court dismissed that part of the complaint requesting injunctive relief against him, but the Court of Appeals reversed. After the appellate court ruling, Spomer was elected the new State's Attorney. Spomer, relying on Supreme Court Rule 48(3), which is based on Federal Rule of Civil Procedure 25(d), and which automatically substitutes a succeeding official in his official capacity in proceedings pending when he takes office, petitioned the Supreme Court for review of the appellate decision. *Spomer v. Littleton, supra,* 414 U.S. at 520–521, 94 S.Ct. 1323.