Jean CARAMICO et al., Plaintiffs-Appellants-Appellees,

v.

The SECRETARY OF THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al., Defendants-Appellees-Appellants.

Nos. 181, 182, Dockets 73–2538, 73–2539.

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1974.

Decided Dec. 16, 1974.

Susan B. Seel, Brooklyn, N. Y. (John C. Gray, Jr., Douglas J. Kramer, Brooklyn Legal Services Corp. B, Brooklyn, N. Y., on the brief), for plaintiffs-appellants-appellees.

Edward J. Shawaker, Atty., Dept. of Justice, Washington, D. C. (Wallace H. Johnson, Asst. Atty. Gen., George R. Hyde, Atty., Dept. of Justice, Washington, D. C., Edward J. Boyd, U. S. Atty. for the Eastern District of New York, Harold J. Friedman, Asst. U. S. Atty., on the brief), for Federal appellees-appellants.

John J. Walsh, New York City (Cadwalader, Wickersham & Taft, W. Mowry Connelly, New York City, on the brief), for defendant-appellee Federal National Mortgage Association.

Before DANAHER,* FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiffs are or were non-owner occupants of two-to-four family dwellings located in low income areas of Brooklyn, the mortgages of which were insured by the Federal Housing Administration (FHA).[1] Under FHA regulations, for a mortgagee to recover on his mortgage insurance after default he must tender possession of the property, unoccupied, to the FHA. Thus, after plaintiffs' landlords defaulted and the properties were foreclosed, the mortgagees sought to evict plaintiffs from their homes to comply with the vacant delivery requirement. Plaintiffs filed this suit in the United States District Court for the Eastern District of New York against the Secretary of the Department of Housing and Urban Development (HUD) and other federal defendants[2] to enjoin the evictions and to secure assistance under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601 et seq. (the Relocation Act). An amended complaint named as additional defendants the Sheriff of the City of New York, the Under-Sheriff of the City of New York for the County of Kings and the Federal National Mortgage Association.[3]

In November 1972, Judge John F. Dooling, Jr., denied plaintiffs' motion for a preliminary injunction against the evictions by the Sheriff and Under-Sheriff. The judge ruled that the Relocation Act did not apply to persons like plaintiffs and that the anti-injunction statute, 28 U.S.C. § 2283, prohibited enjoining state officers from carrying out state

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. There were originally eight plaintiffs in this action. Thereafter, several additional occupants of defaulted FHA-insured properties were allowed to intervene.

2. These were the Commissioner of the FHA, the HUD Regional Administrator for Region II, and the Realty Officer of the Hempstead, N. Y., FHA office. FHA is a sub-agency of HUD.

3. The Federal National Mortgage Association held the mortgages on the properties involved.

court orders of eviction.[4] Thereafter, plaintiffs again sought preliminary relief, this time against the Secretary of HUD and the other federal defendants, to enjoin them from requiring the eviction of plaintiffs as a condition of payment of FHA insurance claims on the foreclosed properties. In June 1973, the judge ruled in favor of plaintiffs and granted preliminary relief. His order enjoined the federal defendants from requiring the removal of tenants as a condition of payment of insurance claims until procedures were adopted which would allow the occupants of the premises to furnish the Secretary information as to why the properties might be conveyed to HUD occupied instead of vacant.[5]

Plaintiffs appeal from the first ruling, the federal defendants from the second. For reasons indicated below, we affirm Judge Dooling's orders on both appeals. The judge not only wrote thorough opinions on the issues involved in this case [6] but also incorporated by reference his opinions in a related case in the Eastern District.[7] Because we agree with the judge's disposition of the legal issues, we might ordinarily have affirmed on the opinions below. Since the opinions are as yet unpublished,[8] however, and in view of the importance of the questions raised, we believe that a further discussion of the legal issues is appropriate.

## I

Plaintiffs claim that the evictions ordered by the state court were improper because plaintiffs had not been granted assistance under the Relocation Act. This Act provides, in essence, that a person will not be displaced from his home to make way for a federal or federally assisted project unless replacement housing and other benefits are made available. Judge Dooling found, however, that plaintiffs were not eligible for Relocation Act assistance. We agree. 42 U.S.C. § 4601(6) defines a displaced person as

> any person who, on or after January 2, 1971, moves from real property, or moves his personal property from real property, as a result of *the acquisition of such real property*, in whole or in part, or as a result of the written order of the acquiring agency to vacate real property, *for a program or project undertaken by a Federal agency, or with Federal financial assistance.* . . . [Emphasis added.]

Plaintiffs assert that the policy of the Secretary of HUD, requiring a vacant dwelling before he will accept possession of the defaulted property and pay off the FHA insurance claim, results in an eviction due to "the acquisition of such real property." While there may well have been such an "acquisition" here, this is not enough. To fall within the definition of displaced persons, plaintiffs must also show that the acquisitions were "for a program or project undertaken by a Federal agency, or with Federal financial assistance." This they have failed to do.

Plaintiffs argue that since the reason the Secretary demands vacant conveyance is to enable him to better deal with the property by rehabilitation or other disposition, the federal mortgage insurance program with its vacant delivery requirement is akin to a federal urban renewal scheme. And since persons displaced by federal urban renewal projects are admittedly eligible for assistance under the Relocation Act, a fortiori plaintiffs displaced by the mortgage insur-

---

4. This ruling was made in a 16-page memorandum dated November 6, 1972, D.C., 390 F.Supp. 210. A judgment dismissing the causes of action based upon the Relocation Act was entered in August 1973.

5. This ruling was made in a 31-page memorandum dated June 13, 1973, D.C., 390 F.Supp. 210.

6. Judge Dooling's opinions, see notes 4 & 5 supra, contain a full discussion of the facts, which we will not repeat here.

7. Manners v. The Secretary, 71 C 550 (E.D.N.Y.).

8. Only one of the opinions in the related *Manners* case has been reported. 333 F.Supp. 829 (E.D.N.Y.1971) (denial of motion for injunction).

ance program must also be. However, this argument overlooks the crucial difference between mortgage insurance acquisitions and acquisitions under programs covered by the Relocation Act.

■ While it is true that the increasing default rate in the mortgage insurance program has made the federal government one of the largest owners of inner city properties, House Comm. on Government Operations, Defaults on FHA-Insured Home Mortgages—Detroit, Mich., H.R.Rep. No. 92–1152, 92d Cong., 2d Sess. 1–7 (1972), these acquisitions must be characterized as random and involuntary while normal urban renewal contemplates a conscious government decision to dislocate some so that an entire area may benefit. Thus, the Relocation Act provides, 42 U.S.C. § 4621:

> The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole.

Similarly, in discussing the purposes of the Relocation Act, the Committee on Public Works of the House of Representatives stated:

> The need for such legislation arises from the increasing impact of Federal and federally assisted programs as such programs have evolved to meet the needs of a growing and increasingly urban population. In a less complex time, Federal and federally assisted public works projects seldom involved major displacements of people. There was relatively little taking of residential or commercial property for farm-to-market routes or for reservoirs or public buildings. Indeed, local support for such projects often resulted in little, if any, cost for land acquisition or rights-of-way. However, with the growth and development of an economy which is increasingly urban and

metropolitan, the demand for public facilities and services has increasingly centered on such urban areas, and the acquisition of land for such projects has become the most difficult facet of many undertakings by public agencies. Also, a major public project—be it a highway, urban renewal project, or hospital—inevitably involves the acquisition and clearance of sites which now provide residential, commercial, or other services. As the thrust of Federal and federally assisted programs have shifted from rural to urban situations, it became increasingly apparent that the application of traditional concepts of valuation and eminent domain resulted in inequitable treatment for large numbers of people displaced by public action. When applied to densely populated urban areas, with already limited housing, the result can be catastrophic for those whose homes or businesses must give way to public needs. The result far too often has been that a few citizens have been called upon to bear the burden of meeting public needs.

H.R.Rep. No. 91–1656, 91st Cong., 2d Sess., 1, 2 (1970); 1970 U.S.Code Cong. & Admin.News, pp. 5850–5851. Various sections of the Relocation Act also indicate that construction programs are the type Congress had in mind in providing displaced person assistance. Section 4626 refers to "actual construction" of the project, section 4625(a) mentions economic injury to neighboring property due to the property acquisition, and section 4651 describes acquisition methods that are inconsistent with the takeover of defaulted property by the FHA.[9]

■ Thus, it is clear that the Act contemplates normal government acquisitions, which are the result of conscious decisions to build a highway here or a housing project or hospital there. In such cases, the acquisition of property and the relocation of certain individuals is a necessary first step in the project. Default acquisitions by the FHA, how-

9. E. g., § 4651(1) refers to negotiation, and § 4651(8) refers to eminent domain.

ever, embody no conscious governmental decisions at all. The choice of applying for an FHA insured mortgage is made by the individual mortgagor and the default, which triggers the FHA acquisition, is his choice as well (if it can ever be said to result from a conscious choice). The only voluntary action taken by the Government is the decision to require unoccupied delivery before making the insurance payment. The acquisition itself, however, is clearly involuntary and in response to the default. In fact, the default acquisition may be said to represent a failure of the FHA program rather than its desired result. In sum, we believe that Judge Dooling was correct in holding that random acquisitions by the FHA of defaulted property are not acquisitions "for a program or project undertaken by a Federal agency" within the contemplation of the drafters of the Relocation Act.[10]

■ Plaintiffs make the further argument that in holding them ineligible for benefits, the district court created constitutional difficulties by enforcing an arbitrary distinction between them and others admittedly eligible for relocation assistance. But this is simply to say that since the Government has chosen to aid some it must aid all, and it is clear that the "legislature may select one phase of one field and apply a remedy there, neglecting the others." Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

■ On the theory that they were entitled to Relocation Act assistance, plaintiffs sought to enjoin the Sheriff of New York City and the Under-Sheriff for Kings County from carrying out the evictions ordered by the state courts. This injunction was properly denied below on the basis of 28 U.S.C. § 2283, which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress . . . ..

Plaintiff claims that the prohibition of eviction contained in the Relocation Act, 42 U.S.C. § 4626(b), is such an express exception to section 2283. But, this could only benefit plaintiffs if the Relocation Act applied to them. We have just held that it does not. Similarly, plaintiffs' claim that their eviction by the Sheriff deprives them of a federal statutory right under color of state law and thereby violates 42 U.S.C. § 1983 fails on our holding of no federal statutory right under the Relocation Act, regardless of the issue of state action.

## II

■ The appeal of the federal defendants raises the issue whether the occupants of the houses, even though not entitled to Relocation Act assistance, nevertheless have a due process right to participate in some way in the decision of the FHA not to waive its general requirement that the buildings be delivered unoccupied.

As already noted, property conveyed by a mortgagee to recover on his FHA mortgage insurance must be vacant unless the Secretary of HUD approves otherwise. 24 C.F.R. § 203.381 (1974). Although the Secretary has apparently provided no formal standards for deciding whether property may be conveyed occupied, HUD's Property Disposition Handbook, One to Four Family Properties (4310.5), does mention some factors for consideration.[11]

---

10. The federal defendants also argue that "Federal financial assistance," referred to in the 42 U.S.C. § 4601(6) definition of displaced persons, cannot include the situation presented here because the Relocation Act elsewhere defines "Federal financial assistance" to exclude federal guarantees or insurance. 42 U.S.C. § 4601(4). In view of our holding that

these acquisitions are not part of a federal program, we need not reach this issue.

11. This handbook is for the guidance of the FHA field workers who are required to pass on applications for a waiver of vacant delivery. It was issued by HUD in September 1970, and is continuously updated. Also of

Paragraph 91 of Chapter 4 provides:

*Approval of Occupancy—Individual Acquisitions.* The mortgagee must vacate a property or obtain the prior consent of the local office to convey a property subject to agreed occupancy. It is normally preferable to have the mortgagee vacate a property so that it may be programmed for repair and exposed to the sales market in the shortest practical time. *Continued tenant occupancy may be considered for a property requiring occupancy to prevent vandalism or for an investment property presenting no advantage insofar as immediate occupancy by a purchaser is concerned or a two to four family dwelling with tenants.*

a. The local office director may agree to take an assignment of a mortgage or accept a property occupied where *eviction by a mortgagee might engender public unrest and tension.* The mortgagee must make a specific request for such action and must present proper evidence to the local office director that the conditions in the area warrant such action. The decision to accept such a property is left to the discretion of the local office director. All due consideration is to be given to mortgagees making such a request. However, mortgagees are not to be permitted to abuse this procedure since it was not designed to allow mortgagees to ignore their obligations or to give them a simplified method of conveying occupied property to the Department on a routine basis. [Emphasis added.]

In this, and in a related case, see note 7 supra, Judge Dooling found that the manner in which these guidelines were applied was inadequate. The judge held that inspection procedures were slipshod

relevance is the Mortgagees' Guide, FHA G 4015.9, Administration of Insured Mortgages, April 1970. This provides, in paragraph 3–4, that the mortgagee is expected to evict the occupants and remove their personal property prior to conveyance to FHA.

12. Manners v. The Secretary, supra, decision dated May 16, 1973, at 37. The opinions of Judge Dooling in this case expressly incorporate his findings in *Manners*.

or nonexistent, that HUD would not respond to plaintiffs' attempts as occupants to participate in the decision whether to waive the vacancy requirement, and that the Secretary's behavior was "so completely unstructured and unmeasurable as to be automatically both covert and arbitrary." [12]

■■ It is true that plaintiffs here do not have a conventional property interest. They have no privity of contract because their leases are no longer in effect and their status as occupiers has been foreclosed by the state court proceedings. Nevertheless, it is now abundantly clear that there are other protectable interests besides the traditional ones. Cf., e. g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (right to public assistance payments); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (continued employment); Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970) (occupancy in public housing); Lopez v. Henry Phipps Plaza South, Inc., 498 F.2d 937 (2d Cir. 1974) (occupancy in quasi-public housing); Joy v. Daniels, 479 F.2d 1236 (4th Cir. 1973) (same); Burr v. New Rochelle Municipal Housing Authority, 479 F.2d 1165 (2d Cir. 1973) (rent increase in public housing). When, as in this case, plaintiffs have resided in their apartments for a substantial period of time, they have some interest in continued occupancy, at least when that occupancy is not flatly prohibited by regulation. In addition, plaintiffs may not be the prime beneficiaries of the National Housing Act, 12 U.S.C. §§ 1701 et seq.,[13] but they certainly should be regarded as intended beneficiaries of this and other Acts designed to further the goal of decent housing for all citizens.[14] Cf. Peo-

13. The prime beneficiaries probably were the mortgagees who had their interests insured under 12 U.S.C. §§ 1707 et seq., and the mortgagors who were able thereby to obtain a mortgage.

14. Manners v. The Secretary, supra, 333 F.Supp. at 832–833.

ples v. United States Dep't of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561 (1970). Since plaintiffs have a protectable interest in continued occupancy, and are beneficiaries of the very Act under which their eviction is demanded, we agree with Judge Dooling that they have a right not to be subjected to treatment both "covert and arbitrary," and must be allowed to have an input into the decision to require eviction.

This input can be of value to the federal defendants as well as to the plaintiffs. For example, plaintiffs may be able to show that the housing they occupy is fit for continued habitation and that the repairs required in order to make it salable do not require the property to be vacated. Or they may be able to show to the satisfaction of the federal defendants that the threat of vandalism if the apartments are vacated is high and that continued occupancy is necessary for preservation of the property.

It is essential to the protection of plaintiffs' rights that they be allowed to participate because neither the FHA nor the mortgagees seem to be able to represent the interests of occupants. The mortgagees are often far removed from the actual property and therefore have no information that could aid the FHA in determining whether vacant delivery is necessary. The FHA has already proved itself incapable of adequately investigating each request.[15] Only plaintiffs, and others in their position, have both the motive and information to insure that a reasoned decision, taking their interest into account, will be made. The federal defendants cite to us Langevin v. Chenango Court, Inc., 447 F.2d 296 (2d Cir. 1971), where we refused to hold that tenants in an FHA-sponsored project had a constitutional right to furnish input into the decision to raise rents. In *Langevin*, the interests of the

tenants were somewhat aligned with those of the FHA, which had "been instructed" to see to it that "tenants should not be imposed upon" by "rent increase applications" by landlords. 447 F.2d at 301. In addition, as Judge Leventhal pointed out in Thompson v. Washington, 162 U.S.App.D.C. 39, 50, 497 F.2d 626, 637 (1973), the panel in *Langevin*[16] "regarded the Government involvement as insufficient to call forth due process protection." In both respects, the situation here is different. Finally, of far greater moment than an increase in rent is the loss of an abode, particularly—as Judge Dooling said—"in deteriorated, low-income neighborhoods where replacement quarters are not readily available at rents the occupiers can afford."[17]

The remedy ordered by the district judge is consistent with the rights we have found plaintiffs to possess. He ordered the Secretary to adopt

after compliance with rulemaking procedures as set forth in 5 U.S.C. § 553, rules respecting waiver of and insistence upon the general vacant delivery requirement, 24 C.F.R. § 203.381, which at minimum provide for notification to occupants of premises that have been or are being foreclosed and are to be or have been conveyed to the Secretary that the Secretary desires to terminate their occupation of the premises, advises them in succinct form of the grounds on which the determination to terminate occupation has been made, and affords the tenant an opportunity to submit and to support with evidence the considerations, if any, that the occupant wishes the Secretary to take into account before reaching a determination and which require an explicit decision by the Secretary of any issue framed by the statement of his grounds for termina-

---

**15.** Judge Dooling found that the federal defendants "evince[d] no pattern of consistent conduct or consistent application of articulate principle." Memorandum of June 13, 1973, 390 F.Supp. at 225. This statement reaffirmed the findings the judge had already made in the earlier *Manners* decisions that the FHA had been lax and slipshod in passing upon requests for waiver of the vacant delivery requirement.

**16.** Judge Oakes dissented in *Langevin*.

**17.** Manners v. The Secretary, supra, Amended Final Judgment, at 2.

tion and the statement of opposing considerations that adequately disposes of the issue . . ..

We believe that this order will not prove unduly burdensome for the Secretary to comply with—its requirements are less than the evidentiary-type hearing required in Goldberg v. Kelly, supra, and it allows the Secretary great flexibility to devise satisfactory procedures.[18] The order of the district court, however, will provide plaintiffs and those like them with a measure of freedom from the arbitrary action to which they have been, until now, subjected.

Judgment affirmed on both appeals.

DANAHER, Senior Circuit Judge (concurring):

I concur in Judge Feinberg's excellent treatment of the issues before us, particularly as he explicates and gives effect to the several opinions in which Judge Dooling has discussed various aspects[1] of the problem.

It is abundantly clear that Judge Dooling's preliminary injunction contemplated that the officers of the Department of Housing and Urban Development were to be bound to rule on the plaintiffs' and intervenors' requests for waiver of the requirement of vacant delivery. The trial judge envisioned that an administrative hearing of some sort was essential, but what type of hearing? Assuredly not a trial-type!

The district court's order relates the hearing requirement to "compliance with rulemaking procedures as set forth in 5 U.S.C. § 553." We may note in Langevin v. Chenango Court, Inc., 447 F.2d 296, 300 (2 CA 1971) that Judge Friendly said:

Any argument that at least the rulemaking procedures in § 4 of the APA, 5 U.S.C. § 553, were demanded would be answered by the exception in § 553(a) for "a matter relating to agency management or personnel or to public property, loans, grants, benefits or contracts." In all this we are in accord with Hahn v. Gottlieb, 430 F.2d 1243, 1247 fn. 4 (1 Cir. 1970).[2]

The extract from Judge Dooling's order, as set forth by Judge Feinberg, simply demonstrates that basically, as we all agree, the tenants or evictees should have a right to be heard. What is involved, in short, is an effort to achieve a balance of conflicting rights. The substantial interest of occupancy by the plaintiffs is not arbitrarily to be terminated as a result of governmental action, but conversely, we recognize that the rights of the mortgagees to recover their insurance are to be considered. On the present record, it appears that the barrier to the protection of such respective rights has been the Secretary's insistence, up to now, that the premises be delivered unoccupied.

We have no doubt that the Secretary can adapt to administrative necessity such formulae as Judge Dooling envisioned in dealing with the equities to be considered.[3] Regulations, or at the very least guidelines, can be formulated by

---

**18.** In the alternative, Judge Dooling's order also allowed the lifting of the preliminary injunction against the federal defendants if they applied to him in the instant action, and on notice to the plaintiffs and intervenors involved, declaring the Secretary's intention to require vacant delivery along with the reasons for that intention for each affected property in the suit.

**1.** One could more readily appreciate the extent to which Judge Dooling has penetrated the intricacies in this area had his pertinent opinions been reported. E. g., he noted that

No consideration was given by the Federal defendants to the interests of the occu-

pants, the possibility that their tenancy might conserve the property, or to the reality of the theoretical possibility that the property could be expeditiously vacated, rehabilitated and resold advantageously. (Page 12, Judge Dooling's memorandum re Jean Caramico property, June 13, 1973.)

**2.** *And see* Brown v. Housing Authority of City of Milwaukee, 471 F.2d 63, 68 (7 CA 1972).

**3.** As Judge Feinberg has pointed out, *supra* n. 18, Judge Dooling has preserved in his order an alternative basis upon which the Federal defendants may seek dissolution of the preliminary injunction.

the Secretary to govern situations such as here have been presented.[4]

In any event we now are doing what can be done[5] along lines required by the order of the district court that conceptions of essential fairness are to control. ·

---

4. Perhaps the Department itself will so act. As Judge Hastie noted, HUD before now has changed policy and practice where the courts and agency experience have demonstrated a need for such action. *Cf.* Jackson v. Lynn, 506 F.2d 233 (D.C.Cir. 1974).

5. The Court has told us that certain landlord-tenant relationships (not too greatly dissimilar in principle) present legislative, not judicial functions. Lindsey v. Normet, 405 U.S. 56, 74, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). The Congress surely can act in areas where judicial remedies may not be available for social and economic ills.