**UNITED STATES of America**

v.

**DIXWELL HOUSING DEVELOPMENT CORPORATION.**

**Civ. No. H–75–240.**

United States District Court,
D. Connecticut.

June 23, 1976.

---

Raymond Sweigart, Asst. U.S. Atty., New Haven, Conn., for plaintiff.

Arthur S. Sachs, Sachs, Sachs & Sachs, Milford, Conn., for defendant.

Bruce A. Morrison, New Haven, Conn., for intervening defendants.

## RULING ON MOTION TO INTERVENE

BLUMENFELD, District Judge.

The United States has brought this action seeking to foreclose a mortgage currently held by the Secretary of the Department of Housing and Urban Development. The defendant, Dixwell Housing Development Corporation, is a non-profit corporation organized under the laws of Connecticut, and is allegedly bankrupt. The property subject to the mortgage is a multifamily dwelling, built and operated under the provisions of Section 236 of the National Housing Act, 12 U.S.C. § 1715z–1. Three tenants of the

housing project, Mildred Coleman, Doris Whittaker and Sylvia Williams, have moved to intervene on behalf of themselves and others similarly situated. Their motion is opposed by the Government.

Intervention as of right is governed by Rule 24(a), Fed.R.Civ.P. That section provides in part that anyone may intervene: "[u]pon timely application . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

There is no suggestion that the motion to intervene was not timely filed or that the intervenors' interests would be adequately represented by the defendant.[1] The conflict revolves around the nature of the intervenors' interests and whether those interests, if any, are in fact threatened.

### I. *The Nature of the Interests*

■ The intervenors claim two interests in the property which is the subject of the foreclosure action. The first is their leasehold interest, which in the case of public housing is constitutionally protected from governmental action. The second is their interest as beneficiaries of two aspects of the National Housing Act; the § 236 program and the rent subsidy program, 12 U.S.C. § 1701s. *Caramico v. Secretary of the Department of Housing & Urban Development,* 509 F.2d 694, 700 (2d Cir. 1974).

■ The Government does not seriously challenge the existence of these interests, but contends that they are not "the subject of the [pending] action." It attempts to limit the issues in the foreclosure action to the establishment of the debt and the existence of default. This argument construes Rule 24 too narrowly. Both of the interests claimed by the intervenors are interests in the *property* which is the subject of this action, and therefore, if they are threatened as a result of this action, they are sufficient to support intervention.

### II. *Impairment*

■ The intervenors have set forth three different ways in which their interests may, as a practical matter, be impaired if they are not allowed to intervene in this action and protect them.

The first is that, as a matter of Connecticut law, their leasehold interests may be destroyed if foreclosure is granted. *See* Conn.Gen.Stat.Ann. § 49–22 (1960).

The second is the threat that, if foreclosure is granted, the intervenors may lose their ability to participate in both the § 236 program and the rent subsidy program. Both programs appear to require a private owner of the property,[2] yet neither program provides for the effect of default and foreclosure by the Government. This gap in the law raises the possibility that both programs and their benefits will automatically terminate upon foreclosure.

■ The final issue is the extent to which the intervenors have a legal right to be heard before the Department formulates its plans concerning the property, a process which is supposed to have begun even before the entry of the foreclosure decree. Initial plans are required to be formulated within 30 days of the decision to begin

---

**1.** The complaint in this action was filed on July 22, 1975, and served on July 24, 1975. If intervention is not granted, it appears that foreclosure will be granted by default.

**2.** Concerning the § 236 program, 12 U.S.C. § 1715z–1(a) states:
"For the purpose of reducing rentals for lower income families, the Secretary is authorized to make, and to contract to make, periodic interest reduction payments *on behalf of the owner* of a rental housing project

designed for occupancy by lower income families . . .." (Emphasis added.)
*See also* 12 U.S.C. § 1715z–1(j)(4).
Concerning the rent supplement program, 12 U.S.C. § 1701s(a) states:
"The Secretary of Housing and Urban Development . . . is authorized to make, and contract to make, annual payments to a 'housing owner' on behalf of 'qualified tenants' . . .."

foreclosure proceedings.[3] And while these plans may be considered "preliminary," certain decisions of great import to the tenants, such as the temporary continuation of their benefits pending ultimate disposition,[4] depend on the nature of these first recommendations.

The Government counters these claims with the assurance that it is the Secretary's policy to consult with and to protect the interests of the tenants in determining the final disposition of the property. This assertion appears to be contradicted by the applicable regulation,[5] and, absent a stipulation of the parties, is insufficient to defeat the right of the intervenors to seek judicial protection.

### III. *Conclusion*

Given these important legal issues, and given the power of this court, when acting in a foreclosure proceeding, to fashion appropriate equitable relief for all parties, I conclude that the intervenors have met the requirements of Rule 24, and that their motion to intervene should be granted.[6]

SO ORDERED.

---

**3.** Under its own regulations, HUD is required to prepare a "narrative report" within 30 days after "notification of anticipated acquisition." Property Disposition Handbook: Multifamily Properties, HM 4315.1, ch. 3, § 2, ¶ 40, at 10 (Jan. 1972). This report is required to contain "an informal opinion as to the future of the project." *Id.,* ¶ 40(i), at 12–1 (June 1975).

**4.** *See* Property Disposition Handbook: Multifamily Properties, HM 4315.1, ch. 3, § 2, ¶ 58(i)(4–5), at 18–1 (June 1975).

**5.** "It is HUD's primary objective to dispose of all acquired multifamily properties at the earliest possible date at the highest price obtainable in the current market. . . . The program, determined by the highest and best use of the project, will be formulated and implemented with a view toward placing the property in a condition to obtain the highest occupancy ratio at maximum rental rates so as to provide the greatest possible return on the Secretary's investment."

Property Disposition Handbook: Multifamily Properties, HM 4315.1, ch. 2, ¶ 21, at 3 (Jan. 1972).

**6.** At this point, of course, I express no opinion on the questions which are raised in the defendants-intervenors' Answer. Nor do I express an opinion on the propriety of allowing the intervenors to proceed as a class, as that issue is not presently before me.