593 F.2d 336
 Osie Bell BLOUNT, Individually and as member of class
displaced from Nursing Inn St. Louis, Appellant,
v.
Patricia Roberts HARRIS, in official capacity and as
Secretary of HUD, USA, John Bullock, in official capacity
and as Area Director of St. Louis Area Office of Department
of HUD, USA, the Department of Housing and Urban
Development, a Federal Agency, Appellees.
 No. 78-1439.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1978.
Decided Feb. 28, 1979.
 
 Richard D. Chase and M. Kathleen O'Blennis, Legal Services of Eastern Missouri, Inc., St. Louis, Mo., for appellant.
 Robert D. Kingsland, U. S. Atty., and Anne C. Travis, Asst. U. S. Atty., St. Louis, Mo., for appellees.
 Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 Ms. Osie Bell Blount appeals the decision of the district court[1] denying her relocation benefits pursuant to the Uniform Relocation Act (URA), 42 U.S.C. §§ 4601 Et seq. We affirm.
 
 
 2
 Ms. Blount is a former resident of Nursing Inn St. Louis. This nursing home was constructed in 1966 with funds loaned by a private financial institution and secured by a mortgage insured by the Department of Housing and Urban Development (HUD) pursuant to § 232 of the National Housing Act, 12 U.S.C. § 1715w. By 1971 the nursing home was plagued with financial problems, and the mortgagee elected to exercise its option under § 207(g) of the National Housing Act and assigned the mortgage to HUD. HUD initially attempted to avoid foreclosure but was forced to take title to the property in a foreclosure sale in 1974 after the delinquent mortgage payments had reached almost $500,000.00. HUD then contracted with a private management firm to operate the nursing home until it could be sold.
 
 
 3
 Attempts to sell the occupied facility to various individuals were unsuccessful, and the nursing home was operated by HUD at a loss for two years. A public sale was also attempted during this period, but the high bid of $521,000.00 was rejected as inadequate. Finally, HUD served written notice to vacate on all residents, evacuated the premises and sold the unoccupied structure shortly thereafter for $1,500,000.00.
 
 
 4
 Ms. Blount filed a class action to gain relocation benefits for all former residents of Nursing Inn. The class was never certified, however, since the district court granted HUD's motion for summary judgment after determining as a matter of law that Ms. Blount was not a "displaced person" within the meaning of the URA and was thus not entitled to relocation benefits.
 
 
 5
 The URA was passed in 1970 to establish a uniform policy for fair and equitable treatment of all persons displaced as a result of any federal or federally assisted program. 42 U.S.C. § 4621. The Act provides that "displaced persons" are entitled to moving expenses, housing replacement expenses and relocation assistance advisory services. 42 U.S.C. §§ 4622-25. "Displaced persons" are defined as follows:
 
 
 6
 The term 'displaced person' means any person who . . . moves from real property . . . as a result of the acquisition of such real property . . . or as a result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency.
 
 
 7
 42 U.S.C. § 4601(6). As the District of Columbia Circuit has cogently noted, this section sets out two alternative grounds of eligibility:
 
 
 8
 having moved as a result of the acquisition of property for a federal program or project (the acquisition clause); Or having moved as a result of a written order of the acquiring agency to vacate the property for a federal program or project (the notice clause). (Emphasis in original.)
 
 
 9
 Cole v. Harris, 187 U.S.App.D.C. 156, 161, 571 F.2d 590, 595 (1977), Cert. granted, 437 U.S. 903, 98 S.Ct. 3087, 57 L.Ed.2d 1132 (1978).
 
 
 10
 The Acquisition Clause.
 
 
 11
 An instructive case construing the acquisition clause is Caramico v. HUD, 509 F.2d 694 (2d Cir. 1974). There the plaintiffs were non-owner occupants of low-income, multiple family dwellings in Brooklyn. They were forced to move after the owners of the buildings defaulted on mortgages insured by the Federal Housing Administration (FHA); FHA regulations required the mortgagee to tender possession of unoccupied property to the agency in order to recover on the mortgage insurance. The Caramico court, in a well-reasoned opinion, denied the plaintiffs' claim for relocation benefits under the acquisition clause of the URA. After reviewing the legislative history of the Act, the court determined Congress intended to provide relocation benefits only for persons displaced as a result of "normal government acquisitions, which are the result of conscious decisions to build a highway here or a housing project or hospital there." Caramico, supra, 509 F.2d at 698, Citing H.R.Rep.No.91-1656, 91st Cong., 2d Sess., 1, 2 (1970); 1970 U.S.Code Cong. & Admin.News, pp. 5850-51. Thus, the court limited the definition of "program or project" in § 4601(6) to the plain meaning of those terms and refused to grant relocation benefits to persons displaced as a result of government acquisition of property due to mortgage foreclosure. Such acquisitions were characterized as "random and involuntary while normal urban renewal contemplates a conscious government decision to dislocate some so that an entire area may benefit." Caramico, supra, 509 F.2d at 698.
 
 
 12
 This court may have placed an additional limitation on the scope of the acquisition clause in Harris v. Lynn, 555 F.2d 1357 (8th Cir. 1977). There we adopted the legal reasoning set forth in the district court's opinion to the effect that tenants of a St. Louis public housing project were not entitled to relocation benefits when HUD was forced to close down the project because of financial difficulties. The district court reasoned that none of the tenants were displaced " 'as a result of the Acquisition' of the property, for a program undertaken with Federal financial assistance or by a Federal agency." Harris v. Lynn, 411 F.Supp. 692, 694 (E.D.Mo.1976). (Emphasis in original.) Thus the acquisition clause does not apply to persons displaced from property already in the ownership of the concerned agency. See Cole v. Harris, supra, 187 U.S.App.D.C. at 176, 571 F.2d at 610 (Wilkey, J., dissenting), for a lucid discussion of our decision in Harris v. Lynn.
 
 
 13
 It is argued that neither the Second Circuit in Caramico nor this court in Harris v. Lynn had occasion to construe the notice clause of § 4601(6). Ms. Blount now brings this task before us with a claim for benefits based solely on the section's notice provisions. But, as we discuss below, the above cases are also relevant to determining the scope of the notice clause and we now proceed to examine that clause and to evaluate Ms. Blount's claim pursuant to it.
 
 
 14
 The Notice Clause.
 
 
 15
 As mentioned, the notice clause of § 4601(6) defines a "displaced person" as one who has moved as a result of the written order of the acquiring agency to vacate real property for a federal program or project. The courts are in agreement that the notice to vacate must be "for" a federal program or project, but there is an apparent split of authority between the District of Columbia and Seventh Circuits over whether the limitations placed upon the acquisition clause by Caramico also apply to restrict the scope of the notice clause.
 
 
 16
 Ms. Blount relies on Cole v. Harris, supra, 187 U.S.App.D.C. at 156, 571 F.2d at 590, in arguing she is entitled to relocation benefits.[2] There the District of Columbia Circuit granted relocation benefits under the notice clause to tenants of a low-income apartment complex who were forced to vacate as a result of HUD's written order. HUD had acquired title to the apartment complex in a mortgage foreclosure proceeding and decided to demolish it after determining that rehabilitation was impracticable.
 
 
 17
 In determining the requirements of the notice clause were satisfied, the Cole court first reasoned that the notice to vacate was "for" a federal program or project, namely the demolition of the apartment complex. It distinguished Caramico as applying only to the acquisition clause and rejected the government's argument that a program or project within the meaning of the notice clause must be a "federal construction or rehabilitation project, such as public works or urban renewal." Secondly, the court refused to read the notice clause as requiring that an agency must have Acquired the property "for" a federal program or project. The government had argued that "acquiring agency" in the notice clause should be interpreted to mean an agency making an "acquisition" as that term was construed by Caramico. Or, "(i)n other words, that the notice definition, like the acquisition definition, should not apply where the property is Acquired due to default and foreclosure and only later is committed to use in a federal program or project." The court found
 
 
 18
 little merit in this argument. Aside from the fact that 'acquiring agency' is Not the same word as 'acquisition' the former is an entity whereas the latter is an event the government's argument proves too much. If an 'acquisition' as that term is used in the acquisition clause is also required under the notice clause, then the notice alternative would be rendered surplusage. (Emphasis in original.)
 
 
 19
 Cole v. Harris, supra, 187 U.S.App.D.C. at 162, 571 F.2d at 596. And it rejected the government's explanation that there was no surplusage in the notice provisions because the notice definition was only intended to apply when an agency issues an order to vacate Before real property is acquired.
 
 
 20
 The majority panel opinion in Cole v. Harris, however, drew a strong dissent from Judge Wilkey who rejected both of the above premises and would have applied Caramico to bar the plaintiffs' recovery. In particular he found
 
 
 21
 no basis for distinguishing between the nature of the acquisition in the two provisions. An 'acquiring agency' in the 'notice' clause should refer to the same type of acquisition as does the 'acquisition' clause. There is of course a presumption that the same word used in different parts of a single statute is intended to have the same meaning each time. Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct 50, 79 L.Ed. 211 (1934). The volitional nature of the acquisition is the same for both classes of displaced persons. And in both clauses there must be an acquisition 'For a program or project.' (Emphasis in original.)
 
 
 22
 Cole v. Harris, supra, 187 U.S.App.D.C. at 172, 571 F.2d at 606 (Wilkey, J., dissenting).
 
 
 23
 Judge Wilkey's position is supported by the Seventh Circuit's decision in Alexander v. HUD, 555 F.2d 166 (7th Cir. 1977), Cert. granted, 437 U.S. 903, 98 S.Ct. 3087, 57 L.Ed.2d 1132 (1978), which was the principal authority relied on by the district court in granting HUD's motion for summary judgment. In that case the court denied relocation assistance pursuant to the notice clause to tenants who were forced to vacate a housing project because of written orders from HUD. As here, HUD had acquired the project in a mortgage foreclosure proceeding and then attempted to operate it through a management firm. But when the property continued to deteriorate, it served notice to vacate on the tenants and later sold the unoccupied buildings.
 
 
 24
 The Alexander court considered the sparse legislative history of the URA and the language of § 4601(6) and determined that the Caramico analysis was equally applicable to the notice clause. Although the terms "program" and "project" are not defined in the URA, the court found support for the Caramico definition in 42 U.S.C. § 4621 which provides:
 
 
 25
 The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole.
 
 
 26
 Based on this declaration of policy, the court concluded that
 
 
 27
 programs and projects are those activities designed for the benefit of the public as a whole. Thus, persons displaced by such programs are persons displaced by government activities involving the acquisition of land to accomplish an objective benefiting the public or fulfilling a public need . . . We fail to see how a decision to terminate a project can itself become a project in the absence of some indication that the decision to terminate and the order to vacate constitute a prelude to some governmental undertaking amounting to a program designed for the benefit of the public as a whole.
 
 
 28
 Alexander v. HUD, supra, 555 F.2d at 170.
 
 
 29
 We have carefully considered the decisions of our sister circuits and agree with the district court that the Caramico analysis is logically applicable to the notice clause of § 4601(6). We believe Judge Wilkey and the Seventh Circuit in Alexander have given effect to the plain language of that section as well as to the legislative intent behind its provisions. And we expressly reject the majority decision in Cole v. Harris insofar as it conflicts with this determination.
 
 
 30
 In our view both the notice clause and the acquisition clause were drafted to provide relocation assistance to persons who are displaced when an acquiring agency gives notice to vacate for a "construction-type" program or project. Contrary to the Cole majority's assertions, there is little indication that Congress intended to grant relocation benefits to persons evicted by a federal agency for the purpose of liquidating a project which the agency acquired through foreclosure of a security interest.[3] Such a construction of the notice clause could place a severe financial burden on agencies such as HUD who often have little control over whether they will purchase property in foreclosure proceedings. In short, we fail to see how a decision to extricate the government from a financially failing housing project through demolition and/or sale of the buildings can be considered a "program or project" within the meaning of the URA.
 
 
 31
 Our views in this respect are consistent with and find support from our previous decision in Harris v. Lynn, Judge Wilkey's dissent in Cole v. Harris, the Second Circuit's decision in Caramico v. HUD, and from the particularly significant views of the Seventh Circuit in Alexander v. HUD. And while we empathize with the Cole majority's sentiment that tenants such as Ms. Blount are frequently in need of relocation benefits, we cannot recast the plain language of § 4601(6) to authorize federal expenditures for this purpose; that task is for the Congress.
 
 
 32
 Accordingly, we hold that Ms. Blount is not entitled to relocation benefits pursuant to the URA because she is not a "displaced person" within the meaning of § 4601(6) of the Act. HUD did not acquire Nursing Inn for the purpose of implementing a federal program or project but rather through an involuntary mortgage foreclosure proceeding, and HUD's order to vacate was not given pursuant to a federal program or project but only for the purpose of expediting the sale of this property and liquidating its investment.
 
 
 33
 Affirmed.
 
 
 
 [1]
 The United States District Court for the Eastern District of Missouri, The Honorable Edward L. Filippine, District Judge, presiding
 
 
 [2]
 See also James Burns v. HUD, No. 4-76-23 (D.Minn. Aug. 17, 1978), which adopted the Cole v. Harris rationale in circumstances similar to those now before us
 
 
 [3]
 In discussing the purposes of the Relocation Act, the Committee on Public Works of the House of Representatives frequently made reference to major public projects such as highways, urban renewal and hospitals. But there is no mention of unplanned acquisitions such as those resulting from mortgage foreclosures. See H.R.Rep.No.91-1656, 91st Cong., 2d Sess., 1, 2 (1970), Reprinted in U.S.Code Cong. & Admin.News, pp. 5850-51 (1970); Caramico v. HUD, Supra, 509 F.2d at 698-99