**Francis and Elvira WELLS, on behalf of themselves and all other persons similarly situated, Plaintiffs,**

v.

**UNITED STATES ADMINISTRATOR OF VETERANS AFFAIRS, Defendant.**

**Angela SLATER, Plaintiff,**

v.

**UNITED STATES ADMINISTRATOR OF VETERANS AFFAIRS, Defendant.**

**Nos. CV 80–1444, CV 80–1599.**

United States District Court, E. D. New York.

March 16, 1982.

Queens Legal Services Corp. by Stanley Bass, Jamaica, N. Y., for plaintiffs Wells.

Leonard S. Clark, Nassau/Suffolk Law Services Committee, Inc. by Carl J. Nathanson, Hempstead, N. Y., for plaintiff Slater.

Edward R. Korman, U. S. Atty. by Jo Davis, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

GEORGE C. PRATT, District Judge:

Plaintiffs Francis and Elvira Wells filed this action seeking injunctive and declaratory relief to prevent the defendant Veterans' Administration (VA) from evicting them from their home. The Wells are the former owners of their home, which was financed by a VA-guaranteed mortgage. The mortgage was foreclosed and the property was conveyed to the VA by the mortgagee. Their suit was originally before Judge Dooling, who denied their motion for a tempo-

rary restraining order but granted the motion of plaintiffs Johnnie and Margaret Stewart, whose situation was similar to that of the Wells, to intervene. Shortly after the Wells' complaint was filed, plaintiff Angela Slater filed suit seeking the same relief. CV 80–1588. Plaintiffs allege jurisdiction under the veterans' benefits statute, 38 U.S.C. § 1820, the mandamus statute, 28 U.S.C. § 1361, the Administrative Procedure Act, 5 U.S.C. § 701, as well as general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## PROCEDURAL ISSUES

*Consolidation.*

After these cases were transferred to the undersigned, defendant moved for summary judgment dismissing the complaints in both actions. Although the legal issues in both cases are substantially identical and the parties have filed their papers citing both docket numbers, it appears from the docket sheets that the cases were never formally consolidated. Since for a determination of the motions currently before it, the court need only consider issues of law, the plaintiffs will be treated as litigants in a single action, and the clerk is directed to consolidate the two cases under the earlier docket number, CV 80–1444.

*Intervention.*

Before turning to defendant's motion for summary judgment, the court will consider the motions of Rose Benson and Loretta Donahue to intervene as plaintiffs. Defendant opposes both motions, claiming that neither individual has standing to sue.

█ With respect to intervenor Benson, defendant's argument is incorrect. As the widow of a former owner of a one-family house financed by a VA-guaranteed mortgage, (the court received a copy of her marriage certificate after defendant argued there was no proof of her marriage), she is part of the group intended to be benefited by the veterans' benefits statute. *See* 38 U.S.C. § 1801(b)(2). Since her claim and that of the plaintiffs herein possess common questions of law, intervenor Benson's mo-

tion to intervene as a plaintiff is granted. F.R.C.P. 24(b)(2).

█ Ms. Donahue's motion to intervene must be denied. She is a tenant in a four-family house whose owner, a veteran, lost title when the mortgage was foreclosed. The property was conveyed to the VA by the mortgagee. Unlike intervenor Benson, she was a tenant of a veteran rather than a family member of a veteran, and, as such, was not the intended beneficiary of the veterans' benefits statute. As the court will discuss below, the statute was intended to provide credit to veterans for the purchase, construction, repair and improvement of homes to be occupied by veteran purchasers only. As a tenant, Ms. Donahue does not fall within this group, and her motion to intervene is therefore denied.

## SUBSTANTIVE ISSUES

The situations of the named plaintiffs and intervenors are virtually identical, although the circumstances leading up to their current plights may differ in some respects. Plaintiffs are all former owners of homes for which they had obtained a VA loan guarantee. They defaulted on their mortgage obligations and failed to cure the default despite repeated notification that failure to cure would lead to foreclosure of their mortgages. Judicial foreclosure proceedings were instituted in state court by the respective mortgages, and after entry of judgment of foreclosure and sale, title to each home was transferred to the VA. All of the plaintiffs currently reside in the homes they formerly owned, and seek to remain as tenants of the VA. Plaintiffs' papers are not specific as to how long they wish to remain as tenants; however, it can be inferred that they are not arguing that the VA should become a permanent landlord, but rather that it should allow plaintiffs to remain until the houses have been sold to third parties. Defendant's mem. in support of motion for summary judgment at 2. Plaintiffs have offered to pay a "fair and reasonable rent". Wells' memorandum at 2.

Plaintiffs predicate their claim for relief on the argument that they have a property interest in their position as tenants of their former homes, and that, therefore, the VA may not evict them without good cause and without due process. Since most of plaintiffs' constitutional and statutory claims must fail if this claimed property interest does not exist, the court will first consider whether, indeed, plaintiffs herein do have a property interest in their tenancy.

*The Existence of a Protectable Interest in Continued Occupancy.*

█ Plaintiffs argue that as former owners of homes now owned by the VA, they have a protectable interest in the continued occupancy of these homes, and, therefore, they must be allowed to have an input into the decision to evict them. They base this claim on a Second Circuit decision, *Caramico v. Secretary of HUD*, 509 F.2d 694 (CA2 1974), and a decision in the Eastern District of New York, *Manners v. Secretary of HUD*, 71 CV 550 (Dooling, J., 1973). In those cases, plaintiffs were non-owner occupants of family dwellings which were financed by mortgages guaranteed by the Federal Housing Administration (FHA). When the mortgages were foreclosed, and title was transferred to the FHA, plaintiffs brought suit seeking to enjoin their evictions by the Secretary of the Department of Housing and Urban Development (HUD). In both cases, the court found that the plaintiffs had a "protectable interest in continued occupancy" and held that although plaintiffs had no conventional property interest since their leases were no longer in effect, they had a right to have input into HUD's decision to require eviction. *Caramico, supra*, at 700.

Plaintiffs argue that the decision in *Caramico* is controlling in this case. They urge that the veterans' benefit statute, 38 U.S.C. § 1801 *et seq.*, and the United States Department of Housing and Urban Development Act, 42 U.S.C. § 3531 *et seq.*, are similar, with similar methods of operation and similar goals. Therefore, they claim, they should be treated no differently than tenants who occupied housing with mort-

gages insured by the FHA pursuant to the Housing and Urban Development Act. Wells' memorandum at 22–27.

An examination of the two statutes and their legislative histories indicates, however, that plaintiffs' argument must fail. The Housing and Urban Development Act has the goal of providing "a decent home and a suitable living environment for every American family". H.Rep.No.90–1585, 90th Cong., 2d Sess. *reprinted in* [1968] U.S.Code Cong. & Ad.News at 2873, 2877. The legislative history demonstrates that congress intended to authorize "a new program of interest subsidies in behalf of low and moderate income *occupants* of rental and cooperative housing." *Id.* at 2874 (emphasis added). Therefore, the act was intended to aid tenants as well as owners. The court in *Caramico* recognized that the plaintiffs in that case "should certainly be regarded as the intended beneficiaries of this and other acts designed to further the goal of decent housing for all citizens." *Caramico, supra*, at 700.

In addition, the Housing and Urban Development Act has as a goal the "sound development of the nation's communities and metropolitan areas in which the vast majority of its people work." 42 U.S.C. § 3531. The act was designed to further the goal of decent housing for all citizens and to promote the betterment of neighborhoods. Thus, the court in *Caramico* and *Manners* considered testimony regarding the deleterious effect that vacant, abandoned, and/or boarded-up housing has upon a neighborhood. Such inquiries are within the purview of HUD since the statute itself mandates that its goal is the betterment of housing conditions for all citizens.

Contrasted with this is the rather limited, albeit worthwhile, goal of the veterans' benefit statute, 38 U.S.C. § 1801 *et seq.*, which is to provide "veterans, upon release from active military service, with federally guaranteed or insured assistance in *purchasing* suitable housing." S.Rep.No.94–806, 94th Cong. 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad.News at 1344, 1346 (emphasis added). Rental housing is no-

where mentioned in the statute. Its only purpose is to aid the returning veteran in purchasing a home. In no way can such a narrow goal be reasonably stretched to imply an intent to provide subsidized federal rental housing.

Thus, although plaintiffs correctly state that they are the intended beneficiaries of the veterans' benefit statute, they have already received the intended benefit—assistance in purchasing a home. The relief they request, that is, to be allowed to remain as tenants, does not fall within the scope of the statute.

Similarly, the VA has no statutory mandate, implied or expressed, to promote the betterment of neighborhoods. "VA programs to benefit men and women because of their service to their country * * * [are] not designed to serve as instruments of attaining general economic or social objectives." Statement of Richard Coon, former Director of Loan Guaranty Service, 94th Cong. 2d Sess. at 26 (1975). Unlike HUD, the VA does not make substantial repairs on property since such expenditures would deplete the fund from which loan guarantees are made. Because HUD must consider the betterment of neighborhoods, it frequently repairs homes it sells in order to upgrade the neighborhood. The VA, on the other hand, must maintain its loan guarantee revolving fund, 38 U.S.C. § 1824, and the direct loan revolving fund, 38 U.S.C. § 1823. The loan guarantee revolving fund must be available for all loan guarantee and insurance operations, and the proceeds derived from the sale of properties such as those in which plaintiffs herein reside, go into this fund. 38 U.S.C. § 1824(c)(2). There is no authority for depleting the loan guarantee fund for the purpose of repairing properties or maintaining properties for rental tenants, which could place the loan guarantee fund in jeopardy and conceivably turn the VA into a rental agency, a function clearly not intended by congress.

In *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), the Supreme Court recognized that it was not the purpose of congress in passing the veterans' benefit statute to provide the returning veteran with a grant of aid. *Id.* at 387, 81 S.Ct. at 1562. Its sole purpose was to enable the returning veteran to obtain a loan to purchase a home "with the least risk of loss upon foreclosure, to both veteran and the Veterans' Administration as guarantor of the veteran's indebtedness." *Id.* at 383, 81 S.Ct. at 1560. The Court found that it was not the intent of congress to allow the defaulting veteran to escape his liability under a VA-guaranteed mortgage. *Id.* at 386–87, 81 S.Ct. at 1562.

Similarly, it was not the intent of congress that the VA become landlords for individuals in plaintiffs' position who, after having obtained a VA-guaranteed loan in accordance with the VA's statutory mandate, have defaulted on their mortgages and forced the VA into its current landlord status. It is immaterial whether or not plaintiffs' defaults were the result of their own fault or circumstances beyond their control. The VA, having decided that it is easier to sell the property when it is vacant, is merely attempting to recoup its investment and return the money to the loan guarantee revolving fund.

The court recognizes that it would be simplistic to view the veterans' benefits statute as not having social ramifications. Nor does the court suggest that the GI loan program has not in fact improved housing opportunities for veterans and non-veterans alike, especially during the years immediately following World War II. However, that is not the issue before the court. Rather, the narrow question here is whether the statute confers on these plaintiffs after foreclosure a protectable interest in continued occupancy which prohibits their eviction without their factual input during the period the homes are up for sale. The court concludes that it does not.

*Denial of Due Process.*

■ Plaintiffs claim that the VA has denied them due process of law in instituting eviction proceedings without consulting them as to the suitability of such action. With the exception of their affidavits stating that the defaults were not their fault, plaintiffs do not disagree with defendant's contention that plaintiffs were afforded adequate due process during the foreclosure

proceedings. Therefore, the issue before the court is what process, if any, is due plaintiffs with respect to their wish to continue to live in their homes as tenants after foreclosure.

The essence of plaintiffs' claim is that because of their "protectable interest in continued occupancy" the VA's failure to adopt any standard or procedures concerning whether properties such as those in this case should be vacated or not is a violation of due process. They further claim that they must be allowed to have input into the decision to require eviction. This argument is made with heavy reliance upon *Caramico, supra*, where the court held that the tenants had to be given an opportunity to participate in the decision by presenting evidence concerning the desirability of allowing them to remain as tenants. *Id.* at 701.

In light of this court's finding that plaintiffs do not have a protectable interest in continued occupancy, their argument that they have been denied due process must fail. In *Caramico*, HUD's statutory purpose and goal of bettering neighborhoods, *see* 42 U.S.C. § 3531, formed the basis for the finding that HUD had to give the plaintiff-tenants the opportunity to present evidence that the neighborhood would be enhanced by rental. Here, the plaintiffs do not have the protectable interest possessed by the plaintiffs in *Caramico*, because, as discussed above, the VA does not have any statutory purpose of improving neighborhoods. Thus, plaintiffs are not entitled to any further procedures to prevent the VA from determining that it is in the interest of the VA and the veterans it serves to evict plaintiffs in order to sell this involuntarily acquired property more quickly. *See, e.g., Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

*Denial of Equal Protection.*

█ Plaintiffs further claim that the VA's determination to evict them from their homes before attempting to sell the property rather than to allow them to remain in the property while it is up for sale denies them equal protection of the law because occupants of HUD-insured housing have input into the decision-making process pursuant to *Caramico.* However, while plaintiffs, as occupants of the VA-insured housing, may receive different treatment than did the plaintiff-tenants in *Caramico*, plaintiffs certainly do not fall into the category of a suspect class. Therefore, the VA need show only that there is a rational relationship between its actions and the goals it wishes to achieve. *See, e.g., City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The VA can adequately demonstrate a rational relationship between its decision to evict plaintiffs and others in plaintiffs' position and its statutory purpose of providing loan guarantees for mortgages to veterans. The administrator of the VA has made a determination that it is easier and more economical to sell property when it is vacant. Despite evidence offered by plaintiffs to support their argument that vacant property can be vandalized and become more difficult to sell, it cannot be said that the administrator's determination is irrational. Balancing the advantages and disadvantages of the rentals proposed by plaintiffs is a complex process properly left to the administrative discretion of the VA. Since the VA's purpose is to maintain the loan revolving fund in order to make loan guarantees on veterans' mortgages, it is reasonable for the VA to determine that it does not wish to place itself in the position of landlord with the resultant responsibility of repairing and maintaining the rental property, even if such responsibility would be limited to the period the property was up for sale. Money spent by the VA in maintaining and repairing the property would be money taken out of the loan revolving fund upon whose solvency fulfillment of the VA's statutory goals depends.

The VA's responsibility is not to provide housing for rental tenants, but to provide loan guarantees. With this statutory purpose in mind, the court must find that the VA's determination to evict tenants in order to increase the possibility of sale of the homes it owns, bears a rational relationship

to the goals of the statute. Given such a rational relationship, plaintiffs have not been denied equal protection of the laws.
*Review Under the Administrative Procedure Act.*

■ Plaintiffs claim that the VA's determination to evict them from their homes was arbitrary and capricious, an abuse of discretion, and, therefore, subject to judicial review pursuant to the Administrative Procedure Act, 5 U.S.C. § 706. However, under 5 U.S.C. § 701(a)(2), a court cannot review agency action which, like this one, is committed to agency discretion. In *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court found that actions were committed to agency discretion where they were "drawn in such broad terms that in a given case there is no law to apply". *Id.* at 410, 91 S.Ct. at 820. In this case, the court finds that the VA's decision whether or not to evict tenants is well within the discretion of the VA, and, thus, not subject to this court's review. 38 U.S.C. § 1820(a)(6) provides that the administrator may do a number of things with respect to VA-guaranteed property, among them repair, modernize, or lease it. However, nowhere does the statute say that the VA must do these things. Where "no * * * standards are set forth according to which the Secretary must exercise his discretion, a court has quite literally no indicia by which it may evaluate that exercise and hence no power to review under § 701(a)(2)." *Greater New York Hospital Association v. Mathews*, 536 F.2d 494, 497–98 (CA2 1976).

■ Plaintiffs contend that the VA Lenders' Handbook, Section H, ¶ 11 supports their position since it permits the VA to rent properties it has acquired. Whatever it may permit, this manual does not require the VA to rent properties. It is intended merely to aid VA employees in servicing guaranteed loans. *See Fitzgerald v. Cleland, Administrator of Veterans' Affairs, et al.*, 498 F.Supp. 341 (Me.1980) (Timbers, J.). *See* defendant's ex. B. It does not provide statutory criteria by which a court might review the agency's discretion. Thus, the decision of the VA not to rent the homes it has acquired under mortgage fore-

closures is not reviewable by this court under § 701(a)(2).

*Failure to File an Environmental Impact Statement.*

Plaintiffs' final argument is that the VA's decision to refuse to rent any of its mortgage foreclosure properties requires that it file an environmental impact statement pursuant to the Environmental Policy Act, 42 U.S.C. § 4332, which provides that all federal agencies must file a statement concerning the environmental impact of their proposed actions and state any adverse environmental effects such actions may have. Plaintiffs argue that the existence of vacant houses has an adverse effect upon the surrounding neighborhoods and that, therefore, the VA must file an environmental impact statement, which it has not done.

■ However, before an environmental impact statement is required, a proposed action must be a "major federal action" significantly affecting the quality of the human environment. 42 U.S.C. § 4332(2)(C). There must be proof that the conduct will have a discernable and significant impact upon the integrity of the nation's physical environmental resources. *Rysavy v. HUD*, 457 F.Supp. 796, 802 (D.S. D.1978). Here, plaintiffs have stated that if these houses are left vacant for any length of time they may fall prey to vandals and/or other criminals, but plaintiffs have not presented any evidence to show that this would be the case other than to cite Judge Dooling's findings of fact in his opinion in *Manners, supra*.

■ Even if the court accepts plaintiffs' argument that there are other persons in the same position in which plaintiffs find themselves, the VA's action still cannot be termed a major federal action. Therefore, the court finds that the VA is not required to file an environmental impact statement before refusing to rent a foreclosed home to its former owner.

## CONCLUSION

The court has great sympathy for the plight of plaintiffs. In a sense, they see

themselves as victimized and treated unfairly because they took advantage of the VA loan guarantee program as opposed to the FHA loan guarantee program, which would have placed them in the position of the plaintiffs in *Caramico*. However, it is clear that the statutory goal of the VA is a narrow one: to enable returning veterans to obtain mortgages through VA-guaranteed loans. To grant plaintiffs herein the relief they request would cast the VA in the role of unwilling landlord, a role it is occupying at the moment due to the fact that plaintiffs have continued to live in their homes during the pendency of this litigation. Such a result was clearly not intended by congress, and this court cannot find that the VA lacks authority to evict these plaintiffs.

For the reasons stated, defendant's motion to dismiss is granted in all respects, and the clerk is directed to enter judgment in favor of defendant.

SO ORDERED.